**Electronically Filed
Supreme Court
SCAP-30616
19-OCT-2011
08:37 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

In re Attorney's Fees of DAVID BETTENCOURT,
Petitioner/Court-Appointed Counsel-Appellant

in

STATE OF HAWAI'I, Respondent/Plaintiff-Appellee,

vs.

JOSHUA GONDA, Respondent/Defendant-Appellee.

SCAP NO. 30616

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 08-1-1534)

October 19, 2011

RECKTENWALD, C.J., NAKAYAMA, ACOBA, DUFFY, AND MCKENNA, JJ.

OPINION OF THE COURT BY MCKENNA, J.

I.    Introduction

Petitioner/Court-Appointed Counsel-Appellant David

Bettencourt ("Bettencourt") appeals from the order of the

Circuit Court of the First Circuit's administrative judge

summarily reducing  excess court-appointed attorney's fees

1

certified by the trial judge as necessary to provide fair compensation. We have accepted Bettencourt's appeal as a discretionary transfer under Hawai'i Revised Statutes (HRS) § 602-58(b)(1)(1993 & Supp. 2010), as this case presents a question of first impression regarding the scope of the administrative judge's authority under HRS § 802-5(b)(1992 & Supp. 2010).[1]

We hold that, under HRS § 802-5(b), both the trial judge and the administrative judge independently review excess fee requests to determine whether a fee award is "fair compensation." Both the trial judge's and administrative judge's orders awarding fees under HRS § 802-5(b) are judicial acts subject to appellate review under the abuse of discretion standard. In this case, because the administrative judge

---

[1] HRS § 802-5(b) states:

> The court shall determine the amount of reasonable compensation to appointed counsel, based on the rate of $90 an hour; provided that the maximum allowable fee shall not exceed the following schedule:
>
> (1) Any felony case                          $6,000
> (2) Misdemeanor case - jury trial             3,000
> (3) Misdemeanor case - jury waived            1,500
> (4) Appeals                                   5,000
> (5) Petty misdemeanor case                      900
> (6) Any other type of administrative or judicial proceeding, including cases arising under section 571-11(1), 571-14(a)(1), or 571-14(a)(2)
>                                               3,000.
>
> Payment in excess of any maximum provided for under paragraphs (1) to (6) may be made whenever the court in which the representation was rendered certifies that the amount of the excess payment is necessary to provide fair compensation and the payment is approved by the administrative judge of that court.

2

summarily reduced Bettencourt's attorney's fees with no reasons given, we cannot determine whether the administrative judge abused his discretion in ordering reduced fees. Therefore, we vacate the administrative judge's June 9, 2010 Order and remand for further proceedings consistent with this opinion.

## II. Background

### A. The Underlying Criminal Case, State v. Gonda, Cr. No. 08-1-1534

On October 10, 2008, the circuit court appointed Bettencourt to represent Joshua Gonda in State v. Gonda, Cr. No. 08-1-1534, nunc pro tunc to the date of the indictment charging Gonda with the following offenses:

> Count I: Attempted Murder in the First Degree
> Counts II and III: Attempted Murder in the Second Degree
> Counts IV, V, VI: Carrying or Use of Firearm in the Commission of a Separate Felony
> Count VII: Place to Keep Pistol or Revolver[2]

Gonda was accused of shooting a sixteen-year-old passenger in a car on Moanalua Freeway. The sixteen-year-old survived but was paralyzed from the chest down. Gonda faced a maximum penalty of life imprisonment without the possibility of parole if convicted.

Bettencourt represented Gonda before trial judge Michael Town ("trial judge") for the duration of the case, from his appointment in early October 2008 through the end of trial in

---

[2] Before trial commenced, the State filed a Motion for Nolle Prosequi without Prejudice as to Count VII.

3

late January 2010 (approximately sixteen months). Jury selection and trial took place over the course of fourteen days in January 2010. After the jury deliberated for one day, it returned a not guilty verdict as to all counts, and a Judgment of Acquittal was subsequently entered.

**B. Bettencourt's Attorney's Fees Requests**

Bettencourt filed two requests for his own fees as appointed counsel. First, on October 29, 2009, Bettencourt requested excess attorney's fees for the billing period from September 30, 2008 through July 31, 2009, in the amount of $19,188.00, representing 213.2 hours, billed at the statutory rate of $90.00 per hour. The trial judge certified the entire amount; administrative judge Richard Perkins ("administrative judge") approved the lesser amount of $18,567.00, representing 206.3 hours, billed at the statutory rate of $90.00 per hour. The administrative judge crossed out entries on Bettencourt's submitted time sheets indicating that he would not allow Bettencourt to bill attorney's fees for making copies of documents, which is not legal work. This attorney's fee request is not the subject of the instant appeal.

Second, on March 17, 2010 (after the trial), Bettencourt submitted his Amended Request for Attorney's Fees to the circuit court, for the billing period covering August 1, 2009 through January 28, 2010, requesting $38,529.00 in excess attorney's

fees for 428.1 hours of work, in addition to the previously approved $18,567.00 for 206.3 hours of work.  The trial judge certified the total amount of fees requested on March 22, 2010.  The administrative judge approved only $26,640.00 of Bettencourt's requested attorney's fees on June 9, 2010, which amounts to a cut of $11,889 in fees.  No notations were made as to whether the administrative judge reduced the fees by some percentage, reduced the fee rate for all hours claimed, or reduced the amount of hours of work billed.  Viewed as a percentage, the reduction is an approximate 31% cut in the amount of fees requested.  Viewed as a reduction to the hourly rate, 428.1 hours of work at approximately $62 per hour, rather than at the statutory maximum rate of $90 an hour, were approved.  Viewed in terms of hours, 296 hours at the statutory rate of $90, rather than 428.1 hours at the statutory rate, were approved.

In addition to making no notations on Bettencourt's time worksheets as to which billed items he disallowed, the administrative judge provided no written explanation for the reduction beyond what was documented by his clerk in an internal court memorandum, which was eventually appended to Bettencourt's second fee request.  According to the internal memorandum, dated June 9, 2010, addressed to the Fiscal Office from the 8th

Division Law Clerk, the reason for the reduction in fees was as follows:

> The reason that the request for attorney fee totals do not match the hourly worksheet totals is that [the administrative judge] summarily reduced the amount. Because the attorney requested an amount of compensation over the $6,000 statutory limit, [the administrative judge] was entitled per the Crim. Admin. Order to summarily reduce the fees granted by the court to a reasonable amount.
>
> Therefore, there are no changes that I can make to the hourly worksheet totals, since the changes were summarily made by [the administrative judge] based on his discretion and were not based on particular inaccuracies or errors in the hourly worksheets.
>
> Criminal Administrative Order ("CAO") No. 1.1, part II reads: "Court-appointed counsel are entitled to reasonable compensation for necessary fees [HRS § 802-5]. The Court determines the amount of **reasonable compensation** based upon statutory limits. If a request appears unreasonable, *the court may summarily reduce* or deny it."
>
> Likewise, CAO No. 1.1, Part II, 4 "Payment Exceeding Maximum Fees" reads, in pertinent part: "Where the presiding judge . . . determines that the excess payment is not necessary to provide fair compensation, *the amount may be summarily reduced*."

(emphasis in original).

The 8th division law clerk's memorandum referred to Criminal Administrative Order ("C.A.O.") 1.1, which read in pertinent part:

> **II.  REQUESTS FOR ATTORNEY'S FEES**
>
> Court-appointed counsel are entitled to reasonable compensation for **necessary fees** [HRS § 802-5]. The Court determines the amount of **reasonable compensation** based upon statutory limits. If a request appears unreasonable, the court may summarily reduce or deny it. Reasonable compensation for fees is based upon the following:
>
> **A.  Fee Schedule**
>
> **1.  Maximum Fees** [HRS § 802-5(b)]

6

> a.  Felony case          $6,000
>
>     .  .  .  .
>
> **2. Compensation Rate** [HRS § 802-5(b)]
>
>   $90 per hour
>
>     .  .  .  .
>
> **4.  Payment Exceeding Maximum Fees** [HRS § 802-5(b)]
>
>> Payment in excess of the statutory maximum is within the discretion of the Court.  Such payment **may** be made if 1) the presiding trial judge certifies that the excess payment is **necessary** for **fair** compensation and 2) the Administrative Judge approves.  Where the presiding judge or **Administrative Judge** determines that the excess payment is not necessary to provide fair compensation, the amount may be summarily reduced.

(emphasis in original, footnote omitted).

Coincidentally, on the same day that the administrative judge reduced Bettencourt's court-appointed attorney's fees, Chief Justice Ronald T. Y. Moon issued a June 9, 2010 Order Rescinding Statewide Court Administrative Orders and Memoranda. The Order stated:

> It appears that previously approved statewide court administrative orders or memoranda include requirements that are more appropriate for court rules than for administrative orders and memoranda and that revised administrative orders and memoranda have not been submitted for my review, as instructed by my May 24, 2007 memorandum to the Chief Judges.  Therefore,
> IT IS HEREBY ORDERED, pursuant to Article VI, § 6 of the Hawaiʻi Constitution and effective immediately upon filing of this order, that all previously approved statewide circuit, family, and district court administrative orders or memoranda are hereby rescinded.
> IT IS FURTHER ORDERED that the Administrative Director shall cause any such administrative orders or memoranda published on the Judiciary's web page(s) to be removed therefrom and shall not permit posting of any administrative order or memorandum unless approved by the Chief Justice.

(emphasis added).  The order was time-stamped filed at 9:57 a.m. on June 9, 2010. There is no time stamp accompanying the administrative judge's approval of $26,640 in fees on June 9, 2010.

**C.  The Instant Appeal**

Bettencourt timely appealed to the ICA, and his timely application for transfer to this court was accepted.  An order granting or denying attorney's fees under HRS § 802-5 is an appealable final order. See State v. Pzeradzki, 6 Haw. App. 20, 21, 709 P.2d 105, 107 (1985).  Bettencourt argues that the administrative judge, in reducing his fees, engaged in a standardless independent review of the trial judge's certification of his attorney's fees, abused his discretion by leaving no reasons on the record for the fee reduction, did not afford Bettencourt notice and an opportunity to be heard before reducing his fees, erroneously relied on C.A.O. 1.1, and was most likely driven by impermissible financial and budgetary motives. Bettencourt argues that the administrative judge's review of the trial court's certification of "fair compensation" should be deferential.  He argues further that arbitrary excess fee reductions pose a constitutional threat to the indigent defendant's right to competent legal representation and the

8

court-appointed attorney's right to due process and interest in fair compensation.

The State of Hawai'i ("State"), through the Attorney General, argues that HRS § 802-5 was not intended to fully compensate court-appointed attorneys, that HRS § 802-5(b) sets forth a standard of "fair compensation" that applies to the trial judge but not the administrative judge, that the administrative judge has unfettered discretion to grant or deny excess attorney's fees, and that the administrative judge was not required to set forth reasons for reducing Bettencourt's fees.

As a threshold matter, both parties dispute whether C.A.O. 1.1 was in effect at the time of the administrative judge's order reducing fees and whether C.A.O. 1.1 authorized the reduction in fees. We need not decide this issue. To the extent that C.A.O. 1.1 permitted a summary reduction of excess attorney's fees, it conflicts with this court's case law, namely In re Attorney's Fees of Reinhard Mohr, 97 Hawai'i 1, 32 P.3d 647 (2001), which held that an order awarding attorney's fees under HRS § 802-5 is a judicial act subject to review under the abuse of discretion standard. Were summary reduction permissible, potentially arbitrary and capricious reductions to excess fee awards would be shielded from appellate review. The summary

9

reduction of attorney's fees is not authorized under HRS § 802-5(b) and Mohr.

## III. Discussion

The statute at issue in this case is HRS § 802-5(b), which states, in relevant part:

> The court shall determine the amount of reasonable compensation to appointed counsel, based on the rate of $90 an hour; provided that the maximum allowable fee shall not exceed the following schedule:
>
> (1) Any felony case                              $6,000
>
> (2) Misdemeanor case - jury trial        3,000
>
> (3) Misdemeanor case - jury waived       1,500
>
> (4) Appeals                                      5,000
>
> (5) Petty misdemeanor case                  900
>
> (6) Any other type of administrative or judicial proceeding, including cases arising under section 571-11(1), 571-14(a)(1), or 571-14(a)(2)        3,000.
>
> Payment in excess of any maximum provided for under paragraphs (1) to (6) may be made whenever the court in which the representation was rendered certifies that the amount of the excess payment is necessary to provide fair compensation and the payment is approved by the administrative judge of that court.

(emphasis added). The statute appears to envision two levels of review based on the legislature's choice of two different verbs for each level of review. First, the trial court "certifies" the amount requested is necessary to provide fair compensation. Second, the administrative judge of the court "approve[s]" the amount. The question is, what was the scope of review the legislature intended at the "certifying" and at the "approving" stages? The legislative history of the act and its many

10

amendments is completely silent as to the meaning of these terms.

We could look to other statutes providing for excess attorney's fees for court-appointed attorneys representing indigent clients to seek guidance in construing the statute in pari materia. See HRS § 1-16 (2009). One such statute is HRS § 571-87 (2006 & Supp. 2010),[3] which authorizes fees for court-appointed counsel and guardians ad litem in family court cases

---

[3] HRS § 571-87(b) reads, in relevant part:

> The court shall determine the amount of reasonable compensation paid to appointed counsel and guardian ad litem, based on the following rates:
>
> (1) $90 an hour for in-court services provided by an attorney licensed to practice law in the State; and
>
> (2) $60 an hour for:
>
> (A) Out-of-court services provided by an attorney licensed to practice law in the State; and
>
> (B) All services provided by a person who is not an attorney licensed to practice law in the State, whether performed in-court or out-of-court.
>
> (c) The maximum allowable fee shall not exceed the following schedule:
>
> (1) Cases arising under chapters [587A] and 346, part X:
>
> (A). Predisposition.......................... $3,000;
>
> (B). Postdisposition review hearing.......... $1,000;
>
> (2) Cases arising under chapters 560, 571, 580, and 584........................................ $3,000.
>
> Payments in excess of any maximum provided for under paragraphs (1) and (2) may be made whenever the court in which the representation was rendered certifies, based upon representations of extraordinary circumstances, attested to by the applicant, that the amount of the excess payment is necessary to provide fair compensation in light of those circumstances, and the payment is approved by the administrative judge of that court.

(emphasis added).

involving child protective services or adult protective services. Like HRS § 802-5(b), HRS § 571-87(b) provides for excess attorney's or guardian ad litem fees when, in addition to the applicant's representation of extraordinary circumstances, the trial court "certifies" the amount as necessary to provide fair compensation and the administrative judge of the court "approve[s]" the amount. However, the legislative history to that statute and its many amendments is also silent as to the scope of each level of review.

We could also turn to the Criminal Justice Act, 18 U.S.C. § 3006A (2000 & Supp. 2011), which is the federal analog to HRS Chapter 802, as an interpretive aid. This court and the legislature have frequently looked to the federal statute for guidance. See Mohr, 97 Haw. at 32, 32 P.3d at 657 (Ramil, J., concurring); Stand. Comm. Rep. 234 in 1987 Senate Journal at 988 (comparing state and federal statutes providing excess compensation for extended and complex cases). 18 U.S.C. § 3006A(d)(3) states, in relevant part:

> Waiving maximum amounts. Payment in excess of any maximum amount provided in paragraph (2) of this subsection may be made for extended or complex representation whenever the court in which the representation was rendered, or the United States magistrate if the representation was furnished exclusively before him, certifies that the amount of the excess payment is necessary to provide fair compensation and the payment is approved by the chief judge of the circuit. The chief judge of the circuit may delegate such approval authority to an active or senior circuit judge.

(emphasis added).

In interpreting the difference in roles between the district judge, who "certifies" excess attorney's fees and the chief judge, who "approves" excess fee certifications, the federal chief judges of the district courts have explained that each exercises <u>independent judgment</u> in reviewing fees.  <u>See</u> <u>United States v. Harper</u>, 311 F.Supp. 1072, 1072-73 (D.D.C. 1970) ("The District Judge approved the voucher as submitted.  On the basis of my independent examination of the voucher and the files and records in the case, I endorsed the application. . . .[I]t is my practice to endorse the [excess fee] application with a brief statement explaining my action."); <u>see</u> <u>also</u> <u>United States v. Sepulveda</u>, 502 F.Supp.2d 1104, 1106 (D. Mont. 2007) ("The process [of approving excess fees] is not one involving a 'rubber stamp.'  It is a meaningful congressionally mandated step that requires detailed justification not only by the lawyer, but also by the approving judge."); <u>see</u> <u>also</u> <u>United States v. D'Andrea</u>, 612 F.2d 1386, 1388 (7th Cir. 1980) ("We cannot conclude that this duty [approving excess fees] is solely ministerial[.]").  Thus, the federal courts envision two distinct levels of independent examination of attorney's fee requests, each of which must be concluded with a justification for the award given.  We are persuaded that both the trial judge and the administrative judge exercise de novo review over

attorney fee requests in excess of the statutory maximum set forth under HRS § 802-5(b), with any reduction in fee accounted for by a statement of reasons as to why the modified fee award constitutes "fair compensation."

In this case, the trial judge certified that the full amount of attorney's fees was reasonable and necessary to provide fair compensation. The administrative judge, on the other hand, approved a lesser amount as reasonable and necessary to provide fair compensation, but no reasons were given as to why. Although we have not previously expressly held that the administrative judge must provide justification for a reduced attorney's fee award, case law interpreting HRS § 802-5, as explained below, reasonably leads to that conclusion.

The leading case interpreting HRS § 802-5 is In re Attorney's Fees of Reinhard Mohr, 97 Hawai'i 1, 32 P.3d 647 (2001). In that case, the ICA approved in part and denied in part a court-appointed appellate defense counsel's ("Mohr") request for attorney's fees under HRS § 802-5. 97 Hawai'i at 3, 32 P.3d at 649. Mohr requested fees in the amount of $1,412.00 for 35.3 hours of service, in support of which he appended worksheets detailing 2 hours of client contact, 21.3 hours of research, and 10.9 hours of reading and drafting court documents; 1.1 hours were unaccounted for in the worksheets. 97 Hawai'i at 4, 6, 32 P.3d at 650, 652. The ICA approved only

$292.00 in fees, representing 7.3 hours of service, and Mohr appealed to this court. 97 Hawai'i at 4, 32 P.2d at 650.

We held that the ICA abused its discretion in reducing Mohr's fee award. 97 Hawai'i at 6, 32 P.3d at 652. While we agreed that Mohr's fees should be reduced for various reasons, we concluded that the ICA abused its discretion in allowing only 2.2 hours out of 21.3 hours documented for research. 97 Hawai'i at 8, 32 P.3d at 654. We therefore ultimately ordered that Mohr be compensated for 15.35 at the statutory hourly rate (then $40 for out-of-court work), or $614.00. Id.

Notable in our treatment of Mohr's appeal was our reliance on the record created by Mohr:

> [W]e also recognize that every review of a fee request requires an analysis of evidence and an application of statutory standards. Such analysis and application is a judicial process like any other original proceeding in which evidence is taken and law is applied. It is an adjudication of the appointed attorney's private, statutory right to be compensated for the work the attorney has done, and the attorney bears the burden of adducing evidence sufficient to justify his or her claim.

97 Hawai'i at 5, 32 P.3d at 651.

In this case, however, the analysis of attorney's fees is not as easy to perform for several reasons. First, Mohr's request was for a relatively low amount, generated by relatively few hours of work on an appeal. The nature of appellate work is subject to ready evaluation by this court, which reviews similar attorney's fees requests for work performed before it. Thus,

15

even though the ICA reduced Mohr's fees without explanation, we were able to evaluate Mohr's fee requests against the work performed to arrive at what was reasonable compensation for Mohr.

In the instant case, however, Bettencourt has requested hundreds of hours' worth of fees, six times the limit set forth by statute for court-appointed representation in a felony case. Mohr, on the other hand, requested fees well within the statutory maximum. 97 Hawaiʻi at 3, 3 n.3, 32 P.3d at 649, 649 n.3. Bettencourt's client faced a multi-count indictment (with counts including attempted first and second degree murder) with a maximum penalty of life imprisonment without the possibility of parole. The representation included a fourteen-day trial, culminating in an acquittal on all counts. The trial judge (in particular) and administrative judge are the ones most capable of evaluating whether the compensation Bettencourt requested was fair in light of the work he performed.

Second, in the instant case, the record does not indicate whether the administrative judge performed an "analysis of evidence and an application of statutory standards" before summarily reducing Bettencourt's fee award. There is no indication of which billable items were disallowed or reduced. As a result, we cannot ascertain whether the administrative judge abused his discretion in deciding that $26,640 was

16

reasonable and necessary to provide fair compensation to Bettencourt.

**IV.  Conclusion**

Based on the foregoing, we hold that (1) under HRS § 802-5(b), both the trial judge and the administrative judge independently review excess fee requests to determine whether a fee award is "fair compensation"; (2) both the trial judge's and administrative judge's orders awarding fees under HRS § 802-5(b) are judicial acts subject to appellate review under the abuse of discretion standard; and (3) to enable appellate review of excess fee awards, if a fee request is reduced, it is necessary for the judge reducing the request to set forth reasons for the reduction.  Accordingly, we vacate the administrative judge's June 9, 2010 Order and remand for further proceedings consistent with this opinion.

| | |
|---|---|
| David Glenn Bettencourt, Attorney at Law, Petitioner/ Real Party in Interest-Appellant | /s/ Mark E. Recktenwald<br>/s/ Paula A. Nakayama |
| Russell Suzuki (Diane Erickson and Robyn B. Chun, Deputy Attorneys General, State of Hawaiʻi, with him on the briefs) for Respondent/Plaintiff- Appellee State of Hawaiʻi | /s/ Simeon R. Acoba, Jr.<br>/s/ James E. Duffy, Jr.<br>/s/ Sabrina S. McKenna |

