321 P.3d 671

**In the Matter of Attorney's Fees Pertaining to John C. McLAREN, Petitioner/Appellant,**

**In the case of Etsuko Furukawa, Claimant,**

v.

**PARADISE INN HAWAIʻI LLC, Employer,**

and

**First Security Insurance Company of Hawaiʻi, Inc., Insurance Carrier.**

No. SCWC–11–0000460.

Supreme Court of Hawaiʻi.

Feb. 21, 2014.

John C. McLaren, Honolulu, petitioner, pro se.

Frances E.H. Lum, Deputy Attorney General, for respondent.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, McKENNA, and POLLACK, JJ.

Opinion of the Court by McKENNA, J.

## I. Introduction

This case concerns John C. McLaren's attorney's fee request to the Director of the Department of Labor and Industrial Relations ("Director") through the Disability Compensation Division of the Department of Labor and Industrial Relations ("DCD"), for his representation of a claimant in a workers' compensation case. John C. McLaren ("McLaren") presents the following questions on certiorari:

A. Did the ICA gravely err in concluding that the September 7, 2010 appeal to the Labor and Industrial Relations Appeals Board was untimely made?

B. Did the ICA gravely err in concluding that I have no fundamental due process rights of notice and an opportunity to be heard at the Disability Compensation Division (DCD) to review and present evidence against its fee reduction?

C. Did the ICA gravely err in concluding that my three requests to DCD for reconsideration were insufficiently supported?

D. Did ICA gravely err in concluding that DCD does not have to convene a contested case type hearing pursuant to my three requests to review and explain its

drastic reduction in my attorney's fees and costs?

As to questions (A) and (C), we hold that the ICA erred in concluding that McLaren's September 7, 2010 appeal to the Labor and Industrial Relations Appeals Board ("LIRAB") was untimely made and that his requests to DCD for reconsideration were insufficiently supported. As to questions (B) and (D), we conclude that (1) McLaren did not have a right to have a contested case hearing before the DCD, but (2) the DCD was required to provide its reasons for reducing McLaren's attorney's fees and costs request.

## II. Background

### A. Facts

McLaren represented a claimant in a workers' compensation case before the DCD that resulted in a stipulation and settlement agreement order awarding the claimant $60,468.89 in benefits for disability and disfigurement. On March 1, 2010, pursuant to Hawai'i Revised Statutes ("HRS") § 386-94,[1] McLaren requested approval of $4,414.08 in attorney's fees and $2,691.44 in costs for a total of $7,105.52. McLaren attached a fee itemization listing the dates, services, hours, and charges for his work on the claimant's case. On June 10, 2010, in a document titled, "Approval of Attorney's Fees," the Director[2] approved McLaren's request, but reduced the amount to $3,729.63. The decision informed McLaren that he could appeal by filing a written notice of appeal within twenty days after the decision had been sent.

Four days later, McLaren sent the DCD a letter objecting to the reduction and requesting a written explanation and/or a hearing on his attorney's fees and costs request.

---

1. HRS § 386-94 (as amended in 2005) states in relevant part:

Claims for services shall not be valid unless approved by the director or, if an appeal is had, by the appellate board or court deciding the appeal. Any claim so approved shall be a lien upon the compensation in the manner and to the extent fixed by the director, the appellate board, or the court. In approving fee requests, the director, appeals board, or court may consider factors such as the attorney's skill and experience in state workers' compensation

matters, the amount of time and effort required by the complexity of the case, the novelty and difficulty of issues involved, the amount of fees awarded in similar cases, benefits obtained for the claimant, and the hourly rate customarily awarded attorneys possessing similar skills and experience. In all cases, reasonable attorney's fees shall be awarded.

2. The decision was signed by the DCD Administrator.

McLaren asserted that the fees approved were substantially less than what he requested and did not appear to include any of the $2,729.63 in costs he requested. On June 28, 2010, McLaren submitted "Form WC–77 Application for Hearing" with the DCD requesting a hearing on the reduction of his request for approval of attorney's fees because the reduction was not based on any: (1) reasonable, meaningful review of the work actually performed; (2) review of the actual records and files; (3) reasonable, written, publicly available standards for reviewing requests for approval of attorney's fees; and (4) reasonable or written factual findings. On July 19, 2010, McLaren requested access to any DCD documents related to the review and approval of his attorney's fees request, pursuant to HRS §§ 92–11 [3] and 92F–12.[4]

On August 4, 2010, McLaren sent the DCD a letter stating that pursuant to Hawai'i Administrative Rules ("HAR") § 2–71–13, agencies were required to respond to requests for records within ten business days, and this period had expired on August 2, 2010. McLaren requested a response to his July 19, 2010 request to access the DCD's records, and a Notice of Hearing in response to his June 14, 2010 request for a hearing, so that if necessary, McLaren could thereafter appeal to the LIRAB.

On August 17, 2010, a DCD staff member informed McLaren that the DCD claim file was available for review. The only record regarding McLaren's fees and costs request in the DCD file was apparently the fee itemization submitted by McLaren with various hours and charges either slashed out or reduced, and a paper adding machine tape.

On August 30, 2010, the DCD Administrator responded to McLaren's August 4, 2010 letter, stating that the DCD made records available upon receipt of form WC–42, "Requests for Information or Photo Copies," at which time he would be advised of the DCD's procedures and arrangements for review of his file. The DCD Administrator also responded that attorneys' fee approvals were generally not addressed via the hearings process and that an appeal should be filed if there were any objections to an approval. Based on McLaren's August 4, 2010 letter, the DCD Administrator informed McLaren that his claim would be forwarded to the LIRAB for further action.

3. "Any final action taken in violation of [HRS] sections 92–3 and 92–7 may be voidable upon proof of violation. A suit to void any final action shall be commenced within ninety days of the action." HRS § 92–11 (as amended in 2005).
HRS § 92–3 provides:
Every meeting of all boards shall be open to the public and all persons shall be permitted to attend any meeting unless otherwise provided in the constitution or as closed pursuant to sections 92–4 and 92–5; provided that the removal of any person or persons who wilfully disrupts a meeting to prevent and compromise the conduct of the meeting shall not be prohibited. The boards shall afford all interested persons an opportunity to submit data, views, or arguments, in writing, on any agenda item. The boards shall also afford all interested persons an opportunity to present oral testimony on any agenda item. The boards may provide for reasonable administration of oral testimony by rule.
HRS § 92–7 is a notice statute requiring any state agency, board, commission, authority, or committee to give written public notice of any regular, special, or rescheduled meeting, including an agenda of the items to be considered at the meeting, the date, time, and place of the meeting.

4. In relevant part, HRS § 92F–12 (2007) states:

[E]ach agency shall make available for public inspection and duplication during regular business hours:
(1) Rules of procedure, substantive rules of general applicability, statements of general policy, and interpretations of general applicability adopted by the agency;
(2) Final opinions, including concurring and dissenting opinions, as well as orders made in the adjudication of cases, except to the extent protected by section 92F–13(1); ...
(7) Minutes of all agency meetings required by law to be public;
...
(15) Information collected and maintained for the purpose of making information available to the general public; and
(16) Information contained in or compiled from a transcript, minutes, report, or summary of a proceeding open to the public.
(b) Any provision to the contrary notwithstanding, each agency shall also disclose:
(1) Any government record, if the requesting person has the prior written consent of all individuals to whom the record refers;
(2) Government records which, pursuant to federal law or a statute of this State, are expressly authorized to be disclosed to the person requesting access[.]

On September 7, 2010, McLaren sent a letter to the DCD Administrator stating that he used form WC–77 "Request to Access Government Record" because unlike WC–42 "Request for Information or Photocopies," form W–77 imposed a time limit on the agency for a response. McLaren also stated that he interpreted the DCD Administrator's letter to mean that the Director had waived his right to exercise his authority pursuant to HRS § 386–73 [5] over McLaren's request for a hearing and that there would be no hearing scheduled in response to his request. Therefore, McLaren requested that the instant correspondence and his June 14, 2010 objection to the approval be considered a timely appeal to the LIRAB. On the same day, McLaren also filed an appeal with the LIRAB appealing the Director's June 8, 2010 reduced approval of his attorney's fees and costs request.

## B. LIRAB Proceedings

### 1. McLaren's Prehearing Memorandum

Before the LIRAB, on December 13, 2010, McLaren submitted a Prehearing Memorandum arguing that the DCD violated various provisions of the Hawai'i Administrative Procedures Act ("HAPA") and Hawai'i's Workers' Compensation Laws when it: (1) acted "arbitrarily and capriciously" and *ultra vires,* i.e., beyond the scope of its authority" by reducing the $7,105.52 requested in attorney's fees and costs by 48% to $3,729.63; and (2) refused to hold a hearing upon McLaren's timely Application for Hearing.

In addition, McLaren argued that the DCD should have approved the requested $7,105.52 in attorney's fees and costs or a substantially similar amount. McLaren argued that the DCD had no substantive information from McLaren, his file, or from the claimant; therefore, the DCD had "engaged in a perfunctory, arbitrary[,] and capricious *ex post facto* determination" of whether McLaren's time and cost expenditures were necessary, and had "made no reasonable determination of 'whether, at the time the work was performed, a reasonable attorney would

have engaged in similar time expenditures.'" McLaren asserted that the LIRAB should conduct its own analysis of his fee request and "not give the DCD's perfunctory review any weight."

### 2. The LIRAB's Decision and Order

The LIRAB dismissed McLaren's September 7, 2010 appeal as untimely. The LIRAB concluded that pursuant to HRS § 386–87(a) (1985), "[a] decision of the director shall be final and conclusive between the parties ... unless within twenty days after a copy has been sent to each party, either party appeals therefrom to the appellate board by filing a written notice of appeal with the appellate board of the department." The LIRAB pointed out that this court in *Kissell v. Labor and Industrial Relations Appeal Board,* 57 Haw. 37, 38, 549 P.2d 470 (1976) held that the time for filing a written notice of appeal is mandatory. Therefore, according to the LIRAB, it did not and could not construe McLaren's: (1) June 14, 2010 letter objecting to the DCD's approval and reduction of his attorney's fees, or (2) June 28, 2010 request for a hearing as an appeal to the LIRAB of the Director's June 10, 2010 decision. In addition, the LIRAB found that McLaren's August 4, 2010 letter expressed his recognition that an appeal had yet to be taken.

The LIRAB concluded that the only filing which it could construe as an appeal was McLaren's September 17, 2010 "Appeal and Notice of Appeal" because it appealed the Director's decision with explicit citation to the statutory provision, HRS § 386–87, governing appeals. The LIRAB found McLaren's failure to use the words, "appeal" or "notice of appeal" in his numerous prior filings conscious, deliberate and intentional. The LIRAB dismissed the appeal pursuant to the "mandatory nature of Section 386–87(a)" and concluded, "[g]iven the dismissal of the appeal, the Board does not reach the issue of the reasonableness of the amount of attorney's fees approved by the Director on June 8, 2010."

---

5. HRS § 386–73 (as amended in 2004) grants the Director original jurisdiction over all controver-

sies and disputes arising under HRS chapter 386.

### 3. Motion for Reconsideration

McLaren filed a "Motion for Reconsideration" and a Memorandum in Support of the Motion ("Memorandum") with the LIRAB requesting reconsideration of its decision to dismiss McLaren's appeal. In the Memorandum, McLaren first argued that the Director, through the DCD, had broad authority under various provisions of HRS Chapter 386 and corresponding administrative rules to schedule hearings in response to reasonable requests based on its quasi-judicial, adjudicatory authority. McLaren maintained that any reference to the contrary on any of the DCD's forms is "gratuitous and is *ultra vires,* and not a lawfully promulgated administrative rule or practice pursuant to [HAPA], and is accordingly, not lawful or binding upon anyone for any purpose."

McLaren further argued that because a claimant's attorney's fees and costs approved by the DCD or the LIRAB are subtracted from compensation otherwise payable to the claimant, and because the approved amount is valuable income to the claimant's attorney, an HRS § 386–86 contested case hearing at the DCD "is warranted in every attorney fee dispute or fee reduction, because the claimant's attorney automatically becomes a party to the claim for the purpose of the appropriate fee determination." McLaren argued that the DCD Administrator had not provided any statute or rule prohibiting attorney's fee approvals from being addressed in the hearings process. McLaren asserted that the August 30, 2010 letter from the DCD was an unconditional waiver of the DCD's original jurisdiction and statutory right to convene a hearing; therefore, his September 7, 2010 appeal was timely filed following the waiver.

McLaren next argued that while many provisions in HRS Chapter 386 contain no explicit procedural due process right to a hearing, the DCD has the authority to convene hearings. He asserted that "any arbitrary, drastic reduction by DCD in the amount of a fee request without first holding a hearing and conducting a competent, objective, fair[,] and honest review of all of the evidence supporting the requested fee" was the "equivalent of unlawfully assessing a significant penalty or fine against the claimant's attorney." McLaren alleged that he had no opportunity to investigate DCD's rationale for its fee reduction. He also argued that if a hearing was not warranted to review reductions in attorney's fees to provide reasonable explanations of how and why the fee was reduced, the appeal process would add unnecessary time and expense when an appropriate, direct, and fair resolution could be provided by the entity responsible for creating the dispute.

Furthermore, McLaren asserted that the DCD convened hearings for other parties under HRS Chapter 386, such as health care providers, who can be sanctioned under Hawai'i's Workers' Compensation Law only after a hearing is held. McLaren argued that "it was plainly inconsistent and irrational" for the DCD to "ignore long established and constitutionally protected concepts of fundamental fairness and procedural due process" by denying a hearing for attorney's fees, while providing a hearing for health care providers.

McLaren maintained that the opportunity at a hearing to review a fee determination and present evidence and arguments against a fee reduction was a crucial and indispensable procedural due process protection because DCD's decision to approve or reduce an attorney's fees dictated the result of the LIRAB's decision. McLaren asserted that despite the LIRAB's *de novo* authority over the DCD's fee determinations, the LIRAB did not provide independent, objective, fair, reasonable, or honest reviews of attorney's fee requests.

McLaren also alleged that the LIRAB routinely upheld DCD's determination of attorney's fees, which reinforces arbitrary, capricious, dishonest, and punitive decisions on fee requests, "rather than fostering objective, fair, reasonable[,] and honest reviews of these requests based on the actual quality and quantity of the work performed and the results obtained." McLaren maintained that this system was therefore, "deficient, defective, and dysfunctional."

Finally, McLaren argued that it was impossible for anyone at DCD to satisfy the evaluation required by HRS § 386–94 and

HAR § 12–10–69 without first convening a hearing to review the entire claim, including the attorney's skill, experience, and particulars of the case. McLaren asserted that the DCD lacked access to information that would have allowed the DCD to make a rational conclusion regarding the reasonableness of his requested fees and costs. He argued that the DCD therefore acted arbitrarily and capriciously, and that its refusal to schedule a hearing was a manifest abuse of discretion.

#### 4. The LIRAB's Order Denying McLaren's Motion for Reconsideration

The LIRAB concluded that the "purpose of a motion for reconsideration is to allow the parties to present new evidence and/or arguments that could not have been presented earlier." (Citing *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 114, 839 P.2d 10, 27 (1992)). In addition, the LIRAB concluded, "a motion for reconsideration is not the time to relitigate old matters." (Citing *Briggs v. Hotel Corp. of the Pac., Inc.*, 73 Haw. 276, 287 n. 7, 831 P.2d 1335, 1342, n. 7 (1992))

The LIRAB found that McLaren's arguments failed to present new evidence and/or arguments that could not have been presented earlier. In addition, the LIRAB concluded

that McLaren failed to demonstrate that HRS Chapter 91's requirements were applicable to the DCD. The LIRAB reiterated that McLaren's argument regarding timeliness of his appeal was without merit because it required a conclusion that the Director had issued a decision after the June 8, 2010 approval of attorney's fees, or in the alternative, that McLaren filed an appeal before his actual September 7, 2010 appeal to the LIRAB. The LIRAB concluded that neither scenario was supported by the record, and denied McLaren's Motion for Reconsideration.

### C. The ICA's Memorandum Opinion

McLaren basically reiterated his arguments to the LIRAB on appeal to the ICA, but additionally argued that his letters to the DCD should be construed as an application to reopen his case pursuant to HRS § 386–89.[6] The ICA concluded that an order awarding or denying attorney's fees and costs pursuant to HRS § 386–94 is a final order for the purposes of appeal in workers' compensation cases. *In Re Furukawa*, ("*Furukawa*") No. CAAP–11–460, 2013 WL 3364095 (App. June 27, 2013) (mem.) at 3–4 (citing *Lindinha v. Hilo Coast Processing Co.*, 104 Hawai'i 164, 169, 86 P.3d 973, 978

---

6. HRS § 386–89 (1993) provides as follows:

(a) In the absence of an appeal and within twenty days after a copy of the decision has been sent to each party, the director of labor and industrial relations may upon the director's own motion or upon the application of any party reopen a case to permit the introduction of newly discovered evidence, and may render a revised decision.

(b) The director may at any time, either of the director's own motion or upon the application of any party, reopen any case on the ground that fraud has been practiced on the director or on any party and render such decision as is proper under the circumstances.

(c) On the application of any party in interest, supported by a showing of substantial evidence, on the ground of a change in or of a mistake in a determination of fact related to the physical condition of the injured employee, the director may, at any time prior to eight years after date of the last payment of compensation, whether or not a decision awarding compensation has been issued, or at any time prior to eight years after the rejection of a claim, review a compensation case and issue a decision which may award, terminate, contin-

ue, reinstate, increase, or decrease compensation. No compensation case may be reviewed oftener than once in six months and no case in which a claim has been rejected shall be reviewed more than once if on such review the claim is again rejected. The decision shall not affect any compensation previously paid, except that an increase of the compensation may be made effective from the date of the injury, and if any part of the compensation due or to become due is unpaid, a decrease of the compensation may be made effective from the date of the injury, and any payment made prior thereto in excess of such decreased compensation shall be deducted from any unpaid compensation in such manner and by such method as may be determined by the director. In the event any such decision increases the compensation in a case where the employee has received damages from a third party pursuant to section 386–8 in excess of compensation previously awarded, the amount of such excess shall constitute a pro tanto satisfaction of the amount of the additional compensation awarded. This subsection shall not apply when the employer's liability for compensation has been discharged in whole by the payment of a lump sum in accordance with section 386–54.

(2004)). The ICA found that McLaren did not dispute that his September 7, 2010 appeal to the LIRAB was an appeal of the Director's June 8, 2010 decision. *Furukawa*, mem. op. at 4. The ICA concluded that the time for filing a notice of appeal to the LIRAB is mandatory and that the LIRAB had therefore correctly concluded that McLaren's appeal was untimely. *Id.* The ICA held that McLaren's appeal of the Director's decision was barred by HRS § 386–87(a), which provides that a Director's decision is final and conclusive, except as provided by HRS § 386–89, unless a written notice of appeal is filed with the appellate board of the department. *Id.* The ICA rejected McLaren's argument that "his filings to the DLIR constituted applications to reopen the case pursuant to HRS § 386–89[.]" *Id.* The ICA found that none of McLaren's filings asserted newly discovered evidence or fraud; therefore, the time to appeal the Director's decision was not tolled. *Furukawa*, mem. op. at 4–5.

Lastly, in regard to McLaren's argument that the DCD was required to provide a contested case hearing, the ICA concluded that pursuant to HRS § 91–1, a "contested case" is "a proceeding in which the legal rights, duties, or privileges of specific parties are <u>required by law</u> to be determined after an opportunity for agency hearing." *Furukawa*, mem. op. at 5 (citing HRS § 91–1 (2012 Repl.) (emphasis in original)). The ICA found that McLaren had not cited to any legal authority that provided that requests for attorney's fees had to be deter-

mined after an opportunity for an agency hearing. *Id.* The ICA concluded McLaren's due process rights had not been infringed because McLaren had an opportunity to appeal the reduction of his attorney's fees request to LIRAB pursuant to HRS § 386–87,[7] but had failed to timely seek an appeal. *Id.* Accordingly, the ICA affirmed the LIRAB's Decision and Order dismissing McLaren's appeal as untimely and the LIRAB's Order denying McLaren's Motion for Reconsideration.

### III. Standards of Review

#### A. Statutory Interpretation

■ The interpretation of a statute is a question of law reviewable de novo. *Lindinha*, 104 Hawai'i at 171, 86 P.3d at 980 (citation omitted). When construing a statute, this court's foremost obligation is to be obtained primarily from the language contained in the statute itself. *Id.* (citation omitted). Where the statutory language is plain and unambiguous, this court's sole duty is to give effect to its plain and obvious meaning. *Schmidt v. Bd. of Directors of Ass'n of Apartment Owners of Marco Polo Apartments*, 73 Haw. 526, 531–32, 836 P.2d 479, 482 (1992).

■ Implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself; however, when there is doubt, double-

---

7. HRS § 386–87 provides:

(a) A decision of the director shall be final and conclusive between the parties, except as provided in section 386–89, unless within twenty days after a copy has been sent to each party, either party appeals therefrom to the appellate board by filing a written notice of appeal with the appellate board or the department. In all cases of appeal filed with the department the appellate board shall be notified of the pendency thereof by the director. No compromise shall be effected in the appeal except in compliance with section 386–78.

(b) The appellate board shall hold a full hearing de novo on the appeal.

(c) The appellate board shall have power to review the findings of fact, conclusions of law and exercise of discretion by the director in hearing, determining or otherwise handling of

any compensation case and may affirm, reverse or modify any compensation case upon review, or remand the case to the director for further proceedings and action.

(d) In the absence of an appeal and within thirty days after mailing of a certified copy of the appellate board's decision or order, the appellate board may, upon the application of the director or any other party, or upon its own motion, reopen the matter and thereupon may take further evidence or may modify its findings, conclusions or decisions. The time to initiate judicial review shall run from the date of mailing of the further decision if the matter has been reopened. If the application for reopening is denied, the time to initiate judicial review shall run from the date of mailing of the denial decision.

ness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. *Awakuni v. Awana*, 115 Hawai'i 126, 133, 165 P.3d 1027, 1034 (2007) (citation omitted). Pursuant to HRS § 1–15 (1985):

Where the words of a law are ambiguous:

(1) The meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

(2) The reason and spirit of the law, and the cause which induced the legislature to enact it, may be considered to discover its true meaning.

(3) Every construction which leads to an absurdity shall be rejected.

### B. Interpretation of Administrative Rules

■ The general principles of construction which apply to statutes also apply to administrative rules. . . . As in statutory construction, courts look first at an administrative rule's language. . . . If an administrative rule's language is unambiguous, and its literal application is neither inconsistent with the policies of the statute the rule implements nor produces an absurd or unjust result, courts enforce the rule's plain meaning.

*Int'l Bhd. of Elec. Workers, Local 1357 v. Hawaiian Tel. Co.*, 68 Haw. 316, 323, 713 P.2d 943, 950 (1986) (citations omitted).

### C. Administrative Appeals

■ "Review of a decision made by a court upon its review of an administrative decision is a secondary appeal. The standard of review is one in which this court must determine whether the court under review was right or wrong in its decision." *Brescia v. N. Shore Ohana*, 115 Hawai'i 477, 491, 168 P.3d 929, 943 (2007) (citations omitted). The standards set forth in HRS § 91–14(g) (1993) apply to the agency's decision. *Id.*

HRS § 91–14(g) provides:

Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

"Under HRS § 91–14(g), conclusions of law are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3); findings of fact are reviewable under subsection (5); and an agency's exercise of discretion is reviewable under subsection (6)." *Alvarez v. Liberty House*, 85 Hawai'i 275, 277, 942 P.2d 539, 541 (1997).

### IV. Discussion

### A. McLaren's Appeal Was Timely Because His Letters Constituted A Request To Reopen Under HRS § 386–89

■ As to McLaren's first and third questions on certiorari, HRS § 386–87 provides, "[a] decision of the director shall be final and conclusive, <u>except as provided</u> in HRS § 386–89, unless within twenty days after a copy has been sent to each party, a party appeals to the appellate board by filing a written notice of appeal." (Emphasis added). Under HRS § 386–89, the director may reopen the case on the following grounds: (1) to permit the introduction of newly discovered evidence, (2) that fraud has been practiced on the director or any party, or (3) a change in or a mistake in a determination of fact related to the physical condition of the injured employee that is supported by a showing of substantial evidence.

The ICA concluded that none of McLaren's filings asserted newly discovered evidence or fraud; therefore, none of his filings

constituted applications to reopen the case pursuant to HRS § 386–89.

■ HRS § 386–89, however, does not specify a format for an application to reopen a case. DLIR's administrative rule governing reopening of cases, HAR § 12–10–63, provides, "[a]n application for reopening of a case pursuant to § 386–89, HRS, shall be in writing, shall state specifically the grounds upon which the application is based, and shall be served upon each party at the time of filing with the director." "If an administrative rule's language is unambiguous, and its literal application is neither inconsistent with the policies of the statute the rule implements nor produces an absurd or unjust result, courts enforce the rule's plain meaning." *Hawaiian Tel. Co.*, 68 Haw. at 323, 713 P.2d at 950 (citation omitted).

McLaren argues that applications to reopen a final DCD decision are typically submitted in letter format. His June 14, 2010 letter objecting to the DCD's approval of his attorney's fees is (1) clearly in writing; (2) specifically states the grounds upon which the application is based, that the approved amount was substantially less than what he requested; and (3) was served on the necessary party, the DCD. In addition, McLaren submitted three additional requests with the DCD: (1) an application for a hearing on June 28, 2010, which refers to his June 14, 2010 letter, stating that the DCD's reduction of his request was without foundation, and not based on any reasonable meaningful review of the work actually performed or the actual records and files on the workers' compensation claim; (2) a "Request for Access to Government Records" on July 19, 2010, requesting access to the DCD's records on its review and approval of McLaren's attorney's fee request; and (3) a letter following up on his July 19, 2010 request to access DCD's records on August 4, 2010, and informing the DCD that he would appreciate prompt notice of when he could review the documents, or a Notice of Hearing so that if necessary, he could appeal to the LIRAB.

Through these requests, McLaren sought to introduce new information that was not previously available because the DCD had not provided any information on the reasons for reducing his attorney's fees. McLaren sought access to the DCD files in order to present information he previously would have been unable to provide—the reasons for DCD's reduction of his request for fees and costs, and his responses to those revisions. Therefore, McLaren's June 14, 2010 letter to the DCD, objecting to the Director's June 8, 2010 approval of his attorney's fees and requesting a hearing, followed by his subsequent letters, was an application to reopen his case pursuant to HRS § 386–89(a) to permit the introduction of newly discovered evidence.

In *Alvarez v. Liberty House*, 85 Hawai'i 275, 942 P.2d 539 (1997), we held that an application to reopen a case pursuant to HRS § 386–89 tolls the twenty day time limitation to file an appeal. We concluded that a "director's decision obviously cannot be 'final and conclusive' while the HRS § 386–89 motion to reopen is pending because HRS § 386–89 clearly states that the director's decision is subject to revision in the event the motion to reopen is granted." *Id.* at 278, 942 P.2d at 542. Accordingly, we held that the twenty-day time limitation to appeal does not commence until the Director formally denies an HRS § 386–89 application to reopen. *Id.*

■ The DCD did not respond to McLaren's letters until August 30, 2010. In its response, the DCD stated that McLaren should have submitted the DCD form, WC–42 (Request for Information or Photo Copies), and upon submission of the form, he would be advised of the DCD's procedures and arrangements for review of his file. The DCD then stated that attorney's fees approvals were not generally addressed via the hearings process, and informed him that, based on the indications of his August 4, 2010 letter, his claim would be forwarded to the LIRAB for further action. Pursuant to *Alvarez*, the DCD's August 30, 2010 letter was the Director's final decision denying McLaren's application to reopen his case. Therefore, McLaren's September 7, 2010 appeal to the LIRAB was timely.

**B. The DCD Was Not Required To Hold A Contested Case Hearing On McLaren's Request To Reopen, But Was Required To Set Forth Its Reasoning**

■ With respect to his second and fourth questions on certiorari, McLaren ar-

gues that he has fundamental due process rights of notice and an opportunity to be heard at the DCD to review and present evidence against the DCD's fee reduction; therefore, the DCD should have convened a formal hearing as a simple procedural due process protection before imposing what "clearly amounts to a penalty in the form of an attorney fee reduction." Alternatively, McLaren argues that the DCD's decisions should include Findings of Fact and Conclusions of Law with some form of review standard to facilitate hearing officers in their decisions.

HRS § 91–1 defines "contested case" to mean "a proceeding in which the legal rights, duties, or privileges of specific parties are required by law to be determined after an opportunity for agency hearing." (Emphasis added). An "'[a]gency hearing' refers only to such hearing held by an agency immediately prior to a judicial review of a contested case as provided in section 91–14." HRS § 91–1 (emphasis added). HRS § 386–87 provides that the LIRAB "shall hold a full hearing de novo on appeal." HRS § 386–88 states that the "decision or order of the appellate board [i.e. LIRAB] shall be final and conclusive, except as provided in section 386–89, unless within thirty days after mailing of a certified copy of the decision or order, the director or any other party appeals to the intermediate appellate court." Here, the legislature expressly decided to provide a hearing before the LIRAB, and not the DCD, because it is the hearing immediately before judicial review.

Moreover, the legislature expressly decided to require contested case hearings before the LIRAB to keep DCD proceedings informal, and to allow claimants and adjusters to represent themselves before the DCD. In 2004, the legislature amended various portions of the Hawai'i's Worker's Compensation Law, HRS Chapter 386, in response to proposed changes to the HAR on workers' compensation. Conf. Comm. Rep. No. 130, in 2004 House Journal, at 1792. The Director

sought, among other things, to establish contested hearing type cases at the DCD level with formal discovery and hearing procedures. *Id.* at 1793. The legislature rejected this proposal stating:

> The Legislature intended that all processing of claims at the Disability Compensation Division (DCD) level and proceedings before the Director be informal, not contested case hearings under chapter 91, HRS. To the degree possible, this allows claimants and adjusters to represent themselves at the DCD level. For that reason, the Labor and Industrial Relations Appeals Board was given de novo review on any appeal. (Section 386–87, HRS). The administrative rules until now have been consistent with this intent by barring discovery procedures typically associated at the appeals board level and civil litigation and only allowing the discovery with approval by the Director upon showing of good cause. (Sections 12–10–65 to 12–10–67, HAR).... These proposed changes which seek to establish contested hearing type cases at the DCD level are in conflict with the legislative intent of an informal process at the DCD level.

*Id.* Thus, the legislature expressly required the LIRAB to hold a full hearing de novo on appeal, and rejected the proposal to require such hearings at the DCD level. We hold, therefore, that the ICA did not err in concluding that the DCD was not required to hold a contested case hearing on McLaren's request to reopen his attorney's fees and costs request.

■ Although the DCD was not required to provide a contested case hearing on McLaren's request to reopen, it was required to set forth its reasons for reducing McLaren's attorney's fees and costs. In *In re Bettencourt*, 126 Hawai'i 26, 32, 265 P.3d 1122, 1128 (2011), we vacated and remanded an administrative judge's order awarding fees under HRS § 802–5(b) [8] because, while the trial court had certified the entire

---

8. HRS § 802–5 (1993 & Supp.2010) governs the appointment of counsel and compensation for services provided to indigent criminal defendants. HRS § 802–5(b) provides that the court shall determine the amount of reasonable com-

pensation to appointed counsel, based on the rate of $90 an hour. In addition, it provides a maximum allowable fee schedule for the different types of criminal cases (e.g. felony cases, misdemeanor, and appeals).

amount requested by the attorney, the administrative judge reduced the total amount of fees by 31% without providing any notations or explanation for the reduction. We rejected the State's argument that the administrative judge had unfettered discretion to grant or deny excess attorney's fees and was not required to set forth reasons for reducing the attorney's fees. *Id.* We concluded that HRS § 802–5(b) granted the administrative judge the authority to independently determine whether a fee award was "fair compensation." *Id.* at 27, 265 P.3d at 1123. Moreover, because an order granting or denying attorney's fees under HRS § 802–5 was an appealable final order, we held the following: (1) the administrative judge's order awarding fees was a judicial act subject to appellate review under the abuse of discretion standard; and (2) "to enable appellate review of excess fee awards, if a fee request is reduced, it is necessary for the judge reducing the request to set forth reasons for the reduction." *Id.*

 Although *Bettencourt* is distinguishable because it involved attorney's fees for a court appointed attorney in a criminal case before an administrative judge and involved an award for "excess" fees, its rationale is relevant to the instant case. HRS § 386–94 provides:

Claims for services shall not be valid unless approved by the director or, if an appeal is had, by the appellate board or court deciding the appeal. Any claim so approved shall be a lien upon the compensation in the manner and to the extent fixed by the director, the appellate board, or the court.

In approving fee requests, the director, appeals board, or court may consider factors such as the attorney's skill and experience in state workers' compensation matters, the amount of time and effort required by the complexity of the case, the novelty and difficulty of issues involved, the amount of fees awarded in similar cases, benefits obtained for the claimant, and the hourly rate customarily awarded attorneys possessing similar skills and experience. In all cases, reasonable attorney's fees shall be awarded. Any person

who receives any fee, other consideration, or gratuity on account of services so rendered, without approval, in conformity with the preceding paragraph, shall be fined by the director not more than $10,000.

(Emphasis added). Similar to the attorney's fees request in *Bettencourt,* the DCD reviews an attorney's fee request to determine whether a fee request is "reasonable." Upon appeal, pursuant to HRS § 386–87(b), "[t]he [LIRAB] shall hold a full hearing de novo on the appeal[,]" and HRS § 386–87(c) provides:

The appellate board shall have power to review the findings of fact, conclusions of law and exercise of discretion by the director in hearing, determining or otherwise handling of any compensation case and may affirm, reverse or modify any compensation case upon review, or remand the case to the director for further proceedings and action.

(Emphasis added). Thus, the LIRAB reviews a DCD award of attorney's fees and costs for abuse of discretion, but does so after a full hearing de novo, pursuant to HRS § 386–87.

In the instant case, McLaren submitted a detailed breakdown of his attorney's fees and costs to the DCD. The DCD appears to have reduced or denied specific charges on his detailed breakdown with various slash marks, but similar to *Bettencourt,* failed to set forth any reasons for the 47% reduction of McLaren's attorney's fee request. Thus, the LIRAB would have been unable to ascertain whether the DCD abused its discretion in awarding "reasonable attorney's fees" pursuant to HRS § 386–94.

We therefore hold that the DCD must set forth its reasons for reducing an attorney's fee request for appropriate LIRAB and possible judicial review of the reduction pursuant to HRS § 91–14. In so holding, however, we do not agree with McLaren's alternative assertion that DCD was required to prepare formal findings of fact and conclusions of law to explain its reduction. Rather, the format of a DCD order reducing attorney's fees and/or costs need only be sufficient to enable appropriate re-

view for abuse of discretion. In this case, no reasons were provided for the reduction.

## V. Conclusion

We hold that McLaren's appeal to the LIRAB was timely because his June 14, 2010 letter objecting to the DCD's reduction of his attorney's fee request and requesting a hearing or an explanation for his request, followed by his subsequent correspondence, constituted an application to reopen his case pursuant to HRS § 386–89. Therefore, the ICA erred in holding that McLaren's appeal was untimely.

In addition, we hold that the DCD's exercise of its discretion pursuant to HRS § 386–94 in awarding reasonable attorney's fees or costs is subject to LIRAB and judicial review under the abuse of discretion standard; therefore, to enable appropriate review of any reductions in such requests, the DCD must appropriately set forth its reasons for the reductions.

Accordingly, we vacate the ICA's Judgment on Appeal affirming the LIRAB's March 21, 2011 "Decision and Order" and May 11, 2011 "Order Denying John C. McLaren's Motion For Reconsideration of Decision and Order Filed March 21, 2011," and remand the case to the DCD for further proceedings consistent with this opinion.