**Electronically Filed
Supreme Court
SCWC-16-0000349
04-MAY-2020
08:02 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

REGINALD BOTELHO, Petitioner/Claimant-Appellant,

vs.

ATLAS RECYCLING CENTER, LLC and HAWAI'I EMPLOYERS' MUTUAL
INSURANCE COMPANY, Respondents/Employer/Insurance Carrier/
Appellees,

and

SPECIAL COMPENSATION FUND, Respondent/Appellee.

SCWC-16-0000349

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000349; CASE NO. AB 2009-334(H)(S)(DCD No. 1-06-
00818))

MAY 4, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.    Introduction

This case concerns the Labor and Industrial Relations

Appeals Board's ("LIRAB") award of attorney's fees to Stanford

Masui ("Masui") for his representation of Reginald Botelho ("Botelho") in a workers' compensation case. Masui submitted a request for attorney's fees to LIRAB requesting an hourly rate of $325. LIRAB approved Masui's request for attorney's fees, but it reduced his hourly rate from $325 to $165. Masui appealed LIRAB's order reducing his requested hourly rate to the Intermediate Court of Appeals ("ICA"), and the ICA affirmed LIRAB's order in a summary disposition order ("SDO").

Masui's application for certiorari ("Application") presents three questions:

> 1. Did the [ICA] gravely err in failing to construe sec. 386-94 HRS in light of its language and legislative history, since the statute does not explicitly grant the Labor and Industrial Relations Appeals Board ("LIRAB") nor the Director of Labor and Industrial Relations ("DLIR")[] the power of setting hourly fee rates for attorneys providing services under the Workers' Compensation chapter, Chap. 386 HRS, but only allows the LIRAB and DLIR (collectively, "agencies") to "consider" hourly rates of attorneys "possessing similar skills and experience?"

> 2. Did the ICA gravely err in utilizing the incorrect standard of review of whether the LIRAB's order was "*ultra vires*," i.e., should the ICA have applied the standard of whether the LIRAB's order was in "violation of constitutional or statutory provisions", and/or "in excess of the statutory authority or jurisdiction of the agency" instead of only an "abuse of discretion" standard as required for statutory interpretation under Sec. 91-14 (g) (1), (2), and (6) HRS ?

> 3. Did the ICA gravely err by failing to find that the LIRAB Order was arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion since the LIRAB failed to articulate any standard to establish hourly fee rate schedules for highly specialized secondary workers' compensation appeals, when no standards are stated in the enabling fee statute, 386-94 HRS, nor any LIRAB Rules of Practice and Procedure, nor any other justification for using an outdated hourly fee rate from 2009 to 2012 for secondary appellate work.

With regard to Masui's first question on certiorari, we hold that HRS § 386-94 (Supp. 2005) authorizes LIRAB to amend an attorney's requested hourly rate in awarding reasonable attorney's fees.  Pursuant to the legislative intent of the 2005 amendment to HRS § 386-94, however, LIRAB is not authorized to predetermine a workers' compensation attorney's "authorized" hourly rate to be applied to that attorney's future cases.  Therefore, the ICA erred to the extent it held that HRS § 386-94 authorizes LIRAB to predetermine an attorney's hourly rate.

With regard to Masui's second question, we hold that the ICA implicitly determined that LIRAB's order was not in violation of constitutional or statutory provisions or in excess of its statutory authority when it held that LIRAB did not abuse its discretion.  Therefore, the ICA did not err.

With regard to Masui's third question, we hold that the ICA erred in holding that LIRAB provided an adequate explanation for its reduction of Masui's requested attorney's fee as required by McLaren v. Paradise Inn Hawai'i LLC, 132 Hawai'i 320, 321 P.3d 671 (2014).  In explaining its reduction of attorney's fees, LIRAB must provide more than a recitation of the factors it considers.  In order to enable review for abuse of discretion, it must also provide some explanation as to how the factors affected its determination.

3

We therefore vacate the ICA's December 6, 2019 judgment on appeal and LIRAB's April 20, 2016 attorney's fee approval and order and remand to LIRAB for further proceedings consistent with this opinion.

## II. Background

### A. Department of Labor and Industrial Relations Disability Compensation Division proceedings

On May 10, 2005, Botelho injured his wrist while working for Atlas Recycling ("Atlas"). On August 8, 2006, Botelho filed a claim for workers' compensation benefits with the Department of Labor and Industrial Relations Disability Compensation Division ("DCD"), and he was represented by Masui. On January 30, 2007, DCD issued a decision ordering Atlas and HEMIC, Atlas's insurance carrier (collectively "Atlas/HEMIC"), to pay for Botelho's medical care.

On January 31, 2007, Masui sent HEMIC a letter calculating Botelho's temporary disability entitlement as $1,386.58. HEMIC did not respond, and Botelho received no temporary disability payments from HEMIC for approximately two years.

Thereafter, on May 15, 2009, DCD issued a decision ordering Atlas/HEMIC to pay for Botelho's medical care and temporary total disability benefits. DCD also "assessed attorney's fees and costs" against Atlas/HEMIC pursuant to HRS § 386-93(a)

4

(Supp. 2004) because Atlas/HEMIC "did not have reasonable grounds to defend the covered issues."[1]

**B.     LIRAB proceedings**

On June 3, 2009, Atlas/HEMIC appealed DCD's decision to LIRAB.  On October 16, 2009, Atlas/HEMIC filed a motion for partial summary judgment, asserting it was not liable for Botelho's attorney's fees because attorney's fees were not part of the "whole costs of the proceedings" under HRS § 386-93(a). On November 16, 2009, LIRAB granted Atlas/HEMIC's motion for partial summary judgment.

Botelho appealed LIRAB's decision to the ICA.  On February 28, 2013, the ICA issued a memorandum opinion holding attorney's fees were part of the "whole costs of the proceedings" under HRS § 386-93(a).  Botelho v. Atlas Recycling Centers, LLC, No. 30226, at 5 (App. Feb. 28, 2013) (mem.).  The ICA vacated LIRAB's decision and remanded for further proceedings.  Id. Accordingly, on remand, LIRAB modified its May 15, 2009 decision and ordered Atlas/HEMIC to pay Botelho's attorney's fees on November 9, 2015.

---

[1]     HRS § 386-93(a) provides: "If the director of labor and industrial relations, appellate board or any court finds that proceedings under this chapter have been brought, prosecuted, or defended without reasonable ground the whole costs of the proceedings may be assessed against the party who has so brought, prosecuted, or defended the proceedings."

Thus, on November 19, 2015, Masui submitted a request to LIRAB for attorney's fees for 88.6 hours of services at $325 per hour rendered before the ICA, and requested a total of $30,893.64 in fees as well as costs of $702.55.[2]  Masui's request stated he had "approximately 30 year's [sic] experience in workers' compensation cases, participated in over 100 cases before [DCD] over the last 3 years, and approximately 50 cases before [LIRAB] over the last 3 years."

On April 20, 2016, LIRAB issued an "attorney's fee approval and order" in response to Masui's November 19, 2015 request ("Order" or "LIRAB's Order"), but reduced Masui's hourly rate from $325 to $165.  LIRAB stated it did "not approve the requested attorney hourly rate of $325.00," and that Masui's "approved hourly rate for the period 2009 through 2012 was $165.00 per hour."  LIRAB listed factors it considered in reviewing and reducing Masui's fee request, stating:

> [i]n reviewing the subject fee request, the Board took into account the benefits obtained for Claimant in this appeal, the novelty and difficulty of issues involved on appeal, the amount of fees awarded in similar appeals, and the hourly rate customarily awarded workers' compensation attorneys possessing similar skills and experience, including Attorney's years of practice in the field of workers' compensation law, the number of clients represented before the Board, as well as Attorney's responsiveness and timeliness.

---

[2]    As indicated by LIRAB, it appears the requested costs had been approved through the first appeal to the ICA and are not at issue in this appeal.

LIRAB noted that Masui had practiced workers' compensation law in Hawai'i for approximately 30 years and had represented approximately 100 clients before the DCD and approximately 50 clients before LIRAB in the past three years.  LIRAB stated "[t]he total amount of $14,720.41 for Attorney's fees is reasonable," and approved that amount.[3]

## C.    ICA Proceedings

### 1.    Masui's arguments

On April 23, 2016, Masui appealed LIRAB's Order to the ICA. On appeal, Masui argued the plain language of HRS § 386-94, "Attorneys, physicians, other health care providers, and other fees," only authorized LIRAB to approve or disapprove attorneys' fees, not to amend or set them.[4]  Masui maintained LIRAB did not

---

[3]    LIRAB's Order also reduced Masui's requested hours.  However, Masui did not appeal LIRAB's reduction of his requested hours.

[4]    HRS § 386-94 provides:

> Claims for services shall not be valid unless approved by the director or, if an appeal is had, by the appellate board or court deciding the appeal.  Any claim so approved shall be a lien upon the compensation in the manner and to the extent fixed by the director, the appellate board, or the court.
>
> In approving fee requests, the director, appeals board, or court may consider factors such as the attorney's skill and experience in state workers' compensation matters, the amount of time and effort required by the complexity of the case, the novelty and difficulty of issues involved, the amount of fees awarded in similar cases, benefits obtained for the claimant, and the hourly rate customarily awarded attorneys possessing similar skills and experience.  In all cases, reasonable attorney's fees shall be awarded.

(continued . . .)

have implied power to amend hourly rates because such power was "not reasonably necessary to effectuate the express power to approve fees," citing TIG Ins. Co. v. Kauhane, 101 Hawai'i 311, 67 P.3d 810 (App. 2003).

Masui also argued the legislative history of HRS § 386-94 indicated the legislature did not intend to give LIRAB the power to set an attorney's hourly rates. In this regard, Masui pointed out that, in 2005, the Department of Labor and Industrial Relations ("DLIR") had proposed amendments to the workers' compensation administrative rules that would have empowered the DLIR Director to "determine the maximum allowable hourly rate" of attorneys and to "adjust the hourly rate and the number of hours requested." The legislature, however, rejected this proposal and stated in a standing committee report that the proposed amendment "represents a usurpation of legislative authority." H. Stand. Comm. Rep. No. 1527, in 2005 House Journal, at 1633.

Masui contended that, in response to DLIR's proposed changes, the legislature introduced Senate Bill ("SB") 1808, with the purpose to: "(1) Codif[y] into law the existing HAR that reflect the purpose and intent of the Legislature in

_____

(continued. . .)
        Any person who receives any fee, other consideration, or
        gratuity on account of services so rendered, without
        approval, in conformity with the preceding paragraph, shall
        be fined by the director not more than $10,000.

8

enacting chapter 386, HRS; [and] (2) Assure[] that the Administration does not usurp the authority of the Legislature in creating laws by limiting the Director's rulemaking authority . . . ." Id. The legislature further stated that, while DLIR was allowed to review attorneys' fees, "[t]hat review . . . was not unfettered and fees that were reasonable were to be approved." Id. The legislature also expressed concern that DLIR's proposed amendments "would result in claimants being unable to secure attorneys in disputed compensability cases." Id.

Masui asserted that SB 1808 "was subsequently passed into law and reflects the current language contained in HRS § 386-94." Masui argued that because the legislature rejected DLIR's Hawai'i Administrative Rules ("HAR") amendments and because of the concerns it expressed in doing so, HRS § 386-94 "acknowledge[s] the lack power" to amend requested hourly rates. Masui also argued that, because LIRAB did not have the power to amend or set attorneys' fees, it had engaged in improper rulemaking pursuant to HRS chapter 91, and its "self-made rule of setting hourly rates is invalid."

Masui additionally asserted that, even if LIRAB had authority to amend hourly rates, LIRAB did not adequately explain its decision to amend his hourly rate. Masui cited Pickett v. Cheesecake Factory Rests., Inc., CAAP-15-0000593, at

7 (App. Aug. 31, 2016) (mem.), in which the ICA ruled that a "recitation of factors enumerated in HRS § 386-94 is not an explanation" for a reduction of an attorney's hourly rate and that LIRAB was "required to apply those factors based on evidence submitted to it so that a reviewing body may adequately assess whether the LIRAB abused its discretion."

Finally, Masui argued LIRAB abused its discretion by considering factors not expressly enumerated in HRS § 386-94 when it considered the "number of clients represented before the Board, as well as Attorney's responsiveness and timeliness."

### 2. Atlas/HEMIC's arguments

Atlas/HEMIC argued that LIRAB "retains the authority to determine reasonable attorney's fees and costs," and that if the legislature had intended to limit DLIR's discretion, the legislature "would have initiated these statutory changes." Atlas/HEMIC also contended that courts "should defer to the agency expertise of LIRAB acting within its area of expertise," citing Nakamura v. State, 98 Hawai'i 263, 270-71, 47 P.3d 730, 737-38 (2002) and Igawa v. Koa House Rest., 97 Hawai'i 402, 409-10, 38 P.3d 570, 577-78 (2001).

### 3. SDO

On October 8, 2019, the ICA issued its SDO affirming LIRAB's Order. Botelho v. Atlas Recycling Center, LLC, CAAP-16-0000349 (App. Oct. 8, 2019) (SDO).

10

First, the ICA rejected Masui's argument that HRS § 386-94 did not authorize LIRAB to amend or set attorneys' hourly rates. Botelho, SDO at 5. The ICA reasoned that the "plain language of HRS § 386-94" authorized LIRAB to consider a list of factors, including "those usually and customarily taken into account in setting an attorney's hourly billing rate . . . ." Botelho, SDO at 6. The ICA also noted that Masui had previously argued that LIRAB was not allowed to "set" hourly rates in DeMello v. Gas Co., CAAP-15-0000527 (App. Aug. 12, 2016) (mem.), and it cited a portion of DeMello stating that "[n]othing in HRS § 386-94 precludes [LIRAB] from employing the 'lodestar method' of calculating reasonable attorney's fees, under which reasonable attorney's fees are calculated by [multiplying] the number of hours reasonably expended by a reasonable hourly rate." Botelho, SDO at 6 (quoting DeMello, mem. op. at 3). Therefore, the ICA held that HRS § 386-94 gave "LIRAB discretion to vary the requesting attorney's hourly billing rate . . . ." Id.

Second, the ICA determined LIRAB had provided a reasonable explanation for its decision to reduce Masui's attorney's fees. Id. The ICA stated that the "burden is on the party seeking attorneys['] fees to prove such fees were reasonably and necessarily incurred," citing DFS Group L.P. v. Paiea Properties, 110 Hawai'i 217, 226, 131 P.3d 500, 509 (2006) (Moon, CJ., concurring). Botelho, SDO at 7. The ICA noted that

11

Masui's fee application did not provide information about his experience in workers' compensation secondary appeals, his level of experience in civil, criminal, family, or administrative agency appellate practice, the usual or customary hourly billing rates of Hawai'i lawyers who practice workers' compensation secondary appeals, or the hourly billing rates of any Hawai'i appellate practitioners. Id. Therefore, the ICA held LIRAB had not abused its discretion in reducing Masui's hourly billing rate based on the record before it. Botelho, SDO at 7-8.

Third, the ICA held LIRAB did not abuse its discretion by considering factors not expressly enumerated by HRS § 386-94 because the "statute's use of the phrase 'such as'" indicated that the list of factors was not exhaustive. Botelho, SDO at 8.

The ICA entered judgment on December 6, 2019.

**D. Application for writ of certiorari**

In his first question on certiorari, Masui argues the ICA erred in interpreting HRS § 386-94 because the plain language of the statute only allows LIRAB to "consider" the reasonableness of attorneys' hourly rates, not to establish or set attorneys' hourly rates. Masui argues that even if the statute is ambiguous, the legislature "specifically declined to amend the law to give the DLIR the power to set hourly rates" in 2005.

In his second question, Masui argues the ICA failed to use the correct standard of agency review under HRS § 91-14(g)

12

(2016), "thus failing to consider if the LIRAB acted ultra vires."  Masui contends the proper standard of review is whether LIRAB's decision was "in violation of [a] constitutional or statutory provision" or "in excess of statutory authority or jurisdiction of the agency," not the abuse of discretion standard.  Masui also asserts that LIRAB had relied on a "fee schedule" and had "been setting hourly rates for all workers' compensation attorneys for a period of years, (including Masui) without explanation  . . . ."  Masui argues that this practice is effectively a "rule" pursuant to HRS § 91-1 (Supp. 2017) and that LIRAB therefore "engaged in improper rulemaking" by acting in excess of its statutory powers.

In his third question, Masui argues the ICA erred by failing to find LIRAB's Order was arbitrary, capricious, or characterized by an abuse of discretion pursuant to HRS § 91-14(g).  Masui asserts the ICA's SDO is "inconsistent with its other rulings regarding attorneys' fees awarded" by LIRAB, and that the "mere recitation of statutory criteria that may be considered for fee approval" without further explanation of the fee reduction is an abuse of discretion.

### III. Standards of Review

**A.   Administrative agency appeals**

"Appellate review of a LIRAB decision is governed by HRS § 91-14(g)[.]"  Igawa, 97 Hawai'i at 405-06, 38 P.3d at 573-74. HRS § 91-14(g) provides:

> Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> > (1) In violation of constitutional or statutory provisions;
> > (2) In excess of the statutory authority or jurisdiction of the agency;
> > (3) Made upon unlawful procedure;
> > (4) Affected by other error of law;
> > (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
> > (6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

**B.   Statutory interpretation**

"The interpretation of a statute is a question of law that is reviewed de novo."  Morgan v. Planning Dept., Cty. of Kaua'i, 104 Hawai'i 173, 179, 86 P.3d 982, 988 (2004) (quoting State v. Mara, 98 Hawai'i 1, 10, 41 P.3d 157, 166 (2002)).

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.  And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists . . . .

> In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

104 Hawai'i at 179-80, 86 P.3d at 988-89 (quoting State v. Sullivan, 97 Hawai'i 259, 262, 36 P.3d 803, 806 (2001)).

### IV. Discussion

### A. The ICA did not fail to utilize the correct standard of agency review

We address Masui's second question first because it concerns the applicable standard of agency review. Masui argues the ICA erred in "failing to use the correct standard of agency review" by only applying the abuse of discretion standard to LIRAB's Order. Masui asserts the ICA should have considered whether LIRAB's actions were "in violation of constitutional or statutory provisions" or "in excess of the statutory authority or jurisdiction of the agency" pursuant to HRS § 91-14(g)(1) and (2).

Because the issue before the ICA was whether HRS § 386-94 authorized LIRAB to amend or set attorneys' requested hourly rates, the proper standard of review under HRS § 91-14(g) was whether LIRAB acted in excess of its statutory authority. The ICA did not specifically discuss this standard. The ICA implicitly determined, however, that it was within LIRAB's statutory authority to amend Masui's hourly rate when it held

15

that LIRAB did not abuse its discretion in doing so.  The ICA examined the plain language of HRS § 386-94 and determined that it authorized LIRAB to consider "the hourly rate customarily awarded attorneys possessing similar skills and experience," and other factors including those "customarily taken into account in setting an attorney's hourly billing rate . . . ."  Botelho, SDO at 6.  Thus, in this regard, the ICA did not err.

**B.     The ICA's statutory interpretation of HRS § 386-94**

**1. HRS § 386-94 authorizes LIRAB to adjust attorneys' requested hourly rates in awarding reasonable fees**

Masui's first question on certiorari is whether the ICA erred in failing to construe HRS § 386-94 in light of the statute's legislative history.  The ICA held that HRS § 386-94 authorizes LIRAB to "vary the requesting attorney's hourly billing rate to arrive at an award of 'reasonable attorney's fees[.]'"  Botelho, SDO at 6 (brackets in original).  Masui argues the ICA erred in interpreting HRS § 386-94 because the plain language of the statute "only allows agencies to 'examine' or 'inspect,' among other factors, the reasonableness of the hourly rate that a workers' compensation attorney may establish in their fee agreements with their clients."  Masui contends that even if the statute's language is ambiguous, the legislative history and intent behind HRS § 386-94 "was to

16

specifically deprive the agencies of the power to set attorneys' hourly fee rates in workers' compensation cases."

"The interpretation of a statute is a question of law that is reviewed de novo." Morgan, 104 Hawai'i at 179, 86 P.3d at 988. "When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statute itself." Id. (quoting Sullivan, 97 Hawai'i at 262, 36 P.3d at 806). Pursuant to HRS § 91-14(g)(2), courts may reverse or modify an agency's decision "if the substantial rights of the petitioner[] may have been prejudiced because the administrative . . . order[ is] . . . [i]n excess of the statutory authority or jurisdiction of the agency[.]"

HRS § 386-94 provides that "[c]laims for services shall not be valid unless approved by the director or, if an appeal is had, by the appellate board or court deciding the appeal." HRS § 386-94 additionally provides factors LIRAB may consider "[i]n approving fee requests," stating:

> [T]he director,[5] appeals board, or court may consider factors such as the attorney's skill and experience in state workers' compensation matters, the amount of time and effort required by the complexity of the case, the novelty and difficulty of issues involved, the amount of fees awarded in similar cases, benefits obtained for the claimant, and the hourly rate customarily awarded attorneys possessing similar skills and experience. In all cases, reasonable attorney's fees shall be awarded.

---

[5] HRS § 386-1 (2017) provides that "'[d]irector' means the director of labor and industrial relations" for the purposes of HRS chapter 386.

(Emphasis added.)

HRS § 386-94 explicitly allows LIRAB, the director, as well as the courts, to consider hourly rates customarily awarded to attorneys possessing similar skills and experience in determining what constitutes a reasonable attorney's fee. Thus, the statute clearly allows LIRAB to adjust an attorney's requested hourly rate in approving reasonable attorney's fees. The sentence, "In all cases, reasonable attorney's fees shall be awarded[,]" also requires LIRAB to reduce an attorney's hourly rate if it is unreasonably high. Thus, HRS § 386-94 is not ambiguous.

Even if HRS § 386-94 was ambiguous, however, an examination of the statute's legislative history shows that the legislature's intent is consistent with the statute's plain language.

Hawai'i's workers' compensation law was enacted in 1915, and the section addressing attorneys' fees provided, in relevant part, "Claims of attorneys and of physicians for services under this Act shall be subject to the approval of the board." Revised Laws of Hawai'i ("RLH") Act 221 § 45 (1915). In 1955, that section was amended to provide that "[c]laims of attorneys and physicians . . . shall not be valid unless approved by the director, or . . . unless approved by such court." RLH § 4453

18

(1955).  When the statute was again amended in 1985, a conference committee report noted that, "[c]laimant attorney and witness fees need to be regulated by the Director to protect the claimant against any excessive charges since such fees are enforced as a lien against the compensation awarded the claimant."  Conf. Comm. Rep. No. 74, in 1985 House Journal, at 946-47 (emphasis added).

In 2005, DLIR amended HAR § 12-10-69,[6] "Attorney's fees," by adding language to allow the DLIR director to "determine the maximum allowable hourly rate" of attorneys' fees and "to adjust the hourly rate and the number of hours requested," and adding factors the director may consider in doing so.  Dept. of Labor & Indus. Relations, Recommendation to the Governor on Proposed Rules for Workers' Compensation Reform 2005 120 (2005) (available at http://dlir.state.hi.us/labor/pdf/wc_recomm.pdf) (hereinafter "DLIR, Recommendation").  The amendment to HAR § 12-10-69(b) read:

> The director shall determine the maximum allowable hourly rate of the attorney and reasonable time allowable on each workers' compensation case.  In approving attorney's fee requests, the director will consider the approved hourly rate of the attorney and the number of hours approved. Factors to be considered in determining an attorney's approved hourly rate include the number of years practicing as an attorney, the number of cases representing workers' compensation claimants during the last three years, and any other pertinent factors that should be considered in determining the hourly rate.  Factors considered in determining the number of hours allowable include the time and effort required by the complexity of the case, novelty

---

[6]    HAR § 12-10-69 implements HRS § 386-94.  See HAR § 12-10-69 (2011).

> and difficulty of issues, benefits obtained for the injured
> employee, and arguments made by the attorney and injured
> employee. <u>The director reserves the right to adjust the
> hourly rate and the number of hours requested.</u>

(Emphasis added.)

Prior to DLIR's 2005 amendments, HAR § 12-10-69(b) had provided:

> In approving fee requests, the director may consider
> factors such as: the attorney's skill and experience in
> Hawaii workers' compensation matters; time and effort
> required by the complexity of the case; novelty and
> difficulty of issues; fees awarded in similar cases;
> benefits obtained for the claimant; hourly rate customarily
> awarded attorneys possessing similar skill and experience;
> and fees awarded in compensation cases usually come out of
> the employee's award.

Based on its concern regarding DLIR's 2005 amendments to the workers' compensation administrative rules, including the amendment to HAR § 12-10-69(b), in 2005, the legislature passed SB 1808 amending sections of HRS chapter 386 to "[a]ssure[] that the Administration does not usurp the authority of the Legislature in creating laws by limiting the Director's rulemaking authority . . . ." H. Stand. Comm. Rep. No. 1527, in 2005 House Journal, at 1634. In a standing committee report, the Committee on Finance specified:

> The intent of this measure is to protect the constitutional
> mandate that the Legislature draft the laws to establish
> policies governing the people of Hawaii. Any delegation of
> our legislative powers to the Executive Branch for
> rulemaking is administrative in nature and does not give
> the Executive Branch the power to make or change the laws
> through rulemaking.

H. Stand. Comm. Rep. No. 1527, in 2005 House Journal, at 1633. In another standing committee report, the Committee on Ways and

20

Means stated, "The purpose of this measure is to invalidate workers' compensation rules adopted on or after January 1, 2005" and to "codif[y] administrative rules that were in effect prior to January 1, 2005, which fairly and reasonably implemented the underlying statutes."  Stand. Comm. Rep. No. 993, in 2005 Senate Journal, at 1500 (emphasis added).

The Committee on Finance stated that DLIR's rule amendments regarding the payment of attorneys' fees were "in direct conflict with existing statutory law, rules, policies and case law."  The Committee on Finance appeared to focus, however, on DLIR's proposed factors for the director to consider in awarding fees and a cap on attorneys' fees that was not actually adopted in the 2005 HAR amendments,[7] stating:

> [t]he Legislature provided for payment of attorney fees upon review by the Director.  (Section 386-94, HRS.)  That review, however, was not unfettered and fees that were reasonable were to be approved.  (See section 386-93(a), HRS.)  The Administration proposes to impose factors that are not relevant in determining if fees are reasonable. (See proposed changes to section 12-10-69(b), HAR.) Arbitrarily limiting claimant attorney fees to 15 percent of the compensation paid would result in no payment if the claimant loses on compensability and arbitrarily reduce legal payments in other disputed areas of a claim.

H. Stand. Comm. Rep. No. 1527, in 2005 House Journal, at 1634. The Committee on Finance also expressed concern that limitations

---

[7]    It appears DLIR initially proposed amending HAR § 12-10-69 to cap "the maximum allowable attorney's fees to be no greater than 15% of the benefits awarded to claimants . . . ."  DLIR, Recommendation at 37.  However, this provision was withdrawn from DLIR's proposed amendment based on testimony opposing the 15% cap.  Id. at 38.

on attorneys' fees may discourage attorneys from practicing in workers' compensation, stating, "In practicality, the proposed changes would result in claimants being unable to secure attorneys in disputed compensability cases . . . ." Id. None of the standing committee reports for SB 1808 discussed whether the power to "approve" reasonable attorneys' fees included the power to adjust attorneys' hourly rates.

The legislature then amended HRS § 386-72 (Supp. 2005) (repealed and reenacted 2007) to prevent all of DLIR's 2005 rule amendments, including the amendment to HAR § 12-10-69(b), from having "the force and effect of law." Importantly, however, the legislature also amended HRS § 386-94 by incorporating the pre-DLIR amendment version of HAR § 12-10-69(b) factors into the statute. Before DLIR's 2005 amendments, HAR § 12-10-69(b) provided:

> In approving fee requests, the director may consider factors such as: the attorney's skill and experience in Hawaii workers' compensation matters; time and effort required by the complexity of the case; novelty and difficulty of issues; fees awarded in similar cases; benefits obtained for the claimant; hourly rate customarily awarded attorneys possessing similar skill and experience; and fees awarded in compensation cases usually come out of the employee's award.

SB 1808 amended HRS § 386-94 to include language almost identical to the pre-DLIR amendment version of HAR § 12-10-69(b), outlining factors that may be considered in approving attorneys' fees. The amended HRS § 386-94 added the following language:

22

> In approving fee requests, the director, appeals board, or court may consider factors such as the attorney's skill and experience in state workers' compensation matters, the amount of time and effort required by the complexity of the case, the novelty and difficulty of issues involved, the amount of fees awarded in similar cases, benefits obtained for the claimant, and the hourly rate customarily awarded attorneys possessing similar skills and experience. In all cases, reasonable attorney's fees shall be awarded.

Thus, the legislative history of HRS § 386-94 shows that the legislature intended to give LIRAB the ability to adjust attorneys' requested hourly rates. The 2005 amendment to HRS § 386-94 explicitly authorized the director to adjust requested hourly rates in approving reasonable attorneys' fees. The legislature also adopted most of the pre-2005 amendment HAR § 12-10-69 factors when it amended HRS § 386-94 in 2005. Those factors permit the director, LIRAB, or a court to consider "the hourly rate customarily awarded attorneys possessing similar skills and experience," indicating an attorney's requested hourly rate can be adjusted by the director, LIRAB, or a court when approving attorneys' fees.

Although the legislature nullified DLIR's 2005 amendments to HAR § 12-10-69, which explicitly articulated the director's power to adjust hourly rates and added new factors to consider in approving fees, that blanket nullification applied to all of DLIR's 2005 rule amendments, not just HAR § 12-10-69. Additionally, the legislature's opposition to DLIR's rule amendments focused on the addition of "factors that are not relevant in determining if fees are reasonable" through

rulemaking and arbitrary caps on attorneys' fees. Yet, the legislature included language patterned on the pre-amendment version of HAR § 12-10-69(b) in amending HRS § 386-94. The legislature also stated that its amendments to HRS chapter 386 were meant to codify the pre-2005 amendment version of the workers' compensation administrative rules, "which fairly and reasonably implemented the underlying statutes." Stand Comm. Rep. No. 993, in 2005 Senate Journal, at 1500. Thus, the director or LIRAB can adjust attorneys' requested hourly rates in approving reasonable attorneys' fees.

We also note that HRS § 386-94 provides that courts may approve attorneys' fees when "deciding [an] appeal." It would be absurd to interpret HRS § 386-94 as prohibiting courts, which regularly review attorneys' fee requests, from adjusting hourly rates.[8] Awarding attorneys' fees is also a judicial function. See In re Malone, 886 A.2d 181, 184 (N.J. Supp. Ct. App. Div. 2005) ("Setting an award of counsel fees is, in our opinion, in the nature of a judicial function."); see also Hoffert v. General Motors Corp., 656 F.2d 161, 165 (5th Cir. 1981) (holding the district court's review of the reasonableness of attorney's fees in approving the terms of a settlement agreement "was essential to the district court's disposition of the case

---

[8] This is especially true for this court, which has the authority to prescribe and enforce rules governing the reasonableness of attorney's fees. See Hawai'i Rules of Professional Conduct Rule 1.5 (2019).

presented to it for decision."); <u>Joseph v. C.C. Oliphant Roofing Co.</u>, 711 A.2d 805, 808 (1997) (holding that "regulation of attorney's fees is a judicial function[.]").  Thus, prohibiting courts from reviewing the reasonableness of attorneys' fees and from adjusting hourly rates would abrogate a judicial function. Neither the language of HRS § 386-94 nor the statute's legislative history indicates any such legislative intent.

Therefore, the ICA did not err in interpreting HRS § 386-94 as granting "LIRAB discretion to vary the requesting attorney's hourly billing rate to arrive at an award of 'reasonable attorney's fees[.]'"  <u>Botelho</u>, SDO at 6.

## 2. HRS § 386-94 does not authorize DCD or LIRAB to predetermine hourly rates for workers' compensation attorneys

In his first question on certiorari, Masui also argues the ICA erred in interpreting HRS § 386-94 because the plain language of the statute does not allow LIRAB to set attorneys' hourly rates or establish a "rate schedule," and LIRAB "acted in excess of its statutory powers" when it "assumed the power to <u>set</u> attorneys' hourly fee rates."  Masui notes that a "critical fact" is that LIRAB and the ICA "relied on [LIRAB's] 'approved hourly rate' schedule (over a period of 2009-2012) for [him]." Masui contends that this "fee schedule" "clearly discloses that [LIRAB] has been setting hourly rates for all workers' compensation attorneys for a period of years, (including Masui)

25

without explanation . . . nor any other source of statutory authority for rate-setting."

While Masui argued before the ICA that HRS § 386-94 did not give LIRAB the power to "amend or set" an attorney's hourly rate, the ICA's holding implies that HRS § 386-94 authorizes LIRAB to set attorneys' hourly rates.  In addressing Masui's argument that LIRAB did not have the power to "amend or set" hourly rates, the ICA simply stated, "[w]e disagree."  Botelho, SDO at 5 (emphasis added).  The ICA then noted that Masui had made this argument in DeMello, and quoted the following portion of that case:

> DeMello argues that the LIRAB is not allowed to set hourly rates, and must only consider the hourly rate customarily awarded attorneys possessing similar skills and experience.  Nothing in HRS § 386-94 precludes the LIRAB from employing the "lodestar method" of calculating reasonable attorney's fees, under which reasonable attorney's fees are calculated by the number of hours reasonably expended by a reasonable hourly rate.

DeMello, mem. op. at 3 (emphasis added).  This quote's discussion of the "lodestar method" does not, however, actually address Masui's contention that HRS § 386-94 does not authorize LIRAB to set hourly rates.  The ICA then discussed LIRAB's ability to "vary the requesting attorney's hourly billing rate" when awarding attorneys' fees, but it did not otherwise directly address whether LIRAB had a practice of setting, not just adjusting, workers' compensation attorneys' hourly rates.  Botelho, SDO at 6.

26

It appears, however, that DCD and LIRAB have a practice of predetermining workers' compensation attorneys' hourly rates to be applied to future cases.  A downloadable form titled "Attorney Hourly Rate Increase Request" currently appears on DCD's website under the "Attorney Fee Request" form.[9]  The form quotes HRS § 386-94's factors that the director, LIRAB, or courts may consider in awarding attorneys' fees.  The form then states: "Please complete the information below which will assist us in determining your authorized hourly rate as required under section 386-94, HRS."  The form asks for attorneys to provide information regarding the date they were licensed, the number of years they have practiced law in Hawai'i, their years of Hawai'i workers' compensation experience, the number of Hawai'i workers' compensation cases they handled in the last ten years, their last three workers' compensation cases, their "current rate," and the "rate being requested."  (Emphasis added.)  The form also provides space for the attorney's "approved hourly rate" and for the signature of the official approving that rate.  DCD has apparently used some version of this form since at least 2012, as Pickett, a case also involving Masui, makes reference

---

[9]    See DCD, Forms, https://labor.hawaii.gov/dcd/forms/ (last visited Mar. 23, 2020) (form available at https://perma.cc/HJ29-8KFA).  This form is not included in the record.  However, as the availability of this form on DCD's website is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," this court takes judicial notice of the form.  Hawai'i Rules of Evidence Rule 201 (1980).

to a "DCD document, dated July 25, 2012, approving Masui's request for an increase in his hourly rate to $160." Pickett, mem. op. at 3 (emphasis added).

As discussed in Pickett, mem. op. at 2, the then-DCD director Dwight Takamine apparently approved Masui's request for an increase of his hourly rate from $160 to $210. However, LIRAB reduced Masui's requested hourly rate of $210 to $165. Masui filed a motion for reconsideration, arguing that the "artificially low rates" in workers' compensation cases had reduced "access to legal representation for injured workers." Pickett, mem. op. at 3. He also asserted that LIRAB's "past practice" had followed DCD's hourly rates by "adding an additional $5.00 per hour, which is an arbitrary method." Id. LIRAB denied Masui's motion for reconsideration, stating:

> [T]here is no statutory requirement that the [LIRAB] must automatically increase attorney hourly rates in tandem with DCD rate increases. Furthermore, the [LIRAB] refuses to cede its statutory authority to review and approve fee requests and attorney hourly rates based on a unilateral rate increase by the former Director that was tied solely to years of experience.

Pickett, mem. op. at 6. LIRAB then determined that an hourly rate of $165 for work before LIRAB was the rate "customarily awarded attorneys possessing similar skills and experience." Pickett, mem. op. at 5. LIRAB also noted that it "receives annual or semiannual requests from attorneys seeking to increase

28

their hourly rates for legal work on appeal." Pickett, mem. op. at 4 (emphasis added).

Although LIRAB correctly stated that there is "no statutory requirement that [LIRAB] must automatically increase attorney hourly rates in tandem with DCD rate increases," LIRAB appeared to rely on a previously set "approved hourly rate of $165.00" for work before LIRAB in awarding attorney's fees to Masui. Pickett, mem. op. at 5-6. Notably, this approved rate of $165 was $5 above DCD's pre-increase rate of $160—consistent with Masui's assertion that it was LIRAB's practice to set hourly rates $5 above DCD's hourly rates. See Pickett, mem. op. at 3. Furthermore, LIRAB acknowledged that it received requests from attorneys seeking "increases" to their hourly rates, suggesting LIRAB had a practice of prospectively setting workers' compensation attorneys' hourly rates. Pickett, mem. op. at 4.

This practice of predetermining hourly rates was also alluded to in DeMello, in which Masui argued that an hourly rate of $210 had been "approved by the DCD," and that "the [LIRAB] rate" has "historically been $5 to $10 above the DCD rate." DeMello, mem. op. at 1. Masui also stated that he "continue[d] to reserve [his] objection to the setting of hourly rates by the DCD and [LIRAB]." DeMello, mem. op. at 2 (emphasis added). In addressing an argument by the employer in that case, Masui noted that "[i]f hourly [rates] were freely established such rates

would also parallel hourly rates customarily charged in the legal community," suggesting workers' compensation attorneys were not free to set their own hourly rates. Id. (emphasis added).

In this case, it appears LIRAB similarly relied on a predetermined "approved hourly rate," as it stated in its Order reducing Masui's requested hourly rate from $325 to $165 that "[Masui's] approved hourly rate for the period 2009 through 2012 was $165.00 per hour," indicating that LIRAB had set Masui's hourly rate at $165 for those four years.

HRS § 386-94 authorizes DCD and LIRAB to adjust an attorney's hourly rate when approving an attorney's request for fees. The plain language of HRS § 386-94 provides factors that may be considered, such as an attorney's experience in workers' compensation and the hourly rate customarily awarded to attorneys possessing similar skills and experience, "[i]n approving fee requests." The language of the statute does not state, however, that DCD or LIRAB are authorized to set an attorney's hourly rate before a request for attorneys' fees has been submitted.

Even if it could be argued that the statute's language is ambiguous in this regard, the legislative history of HRS § 386-94 clearly shows that the legislature did not intend to allow DCD or LIRAB to set an attorney's hourly rate before a

30

request for attorneys' fees has been submitted.  In adopting the amended version of HRS § 386-94 in 2005, as noted, the legislature explicitly rejected and abrogated the 2005 amendment to HAR § 12-10-69(b) stating "The director shall determine the maximum allowable hourly rate of the attorney and reasonable time[10] allowable on each workers' compensation case."  The legislature also rejected DLIR's attempt to impose "arbitrary" caps on attorneys' fees out of concern that it would result in "claimants being unable to secure attorneys" in workers' compensation cases.  See H. Stand. Comm. Rep. No. 1527, in 2005 House Journal, at 1634.  As expressed by the legislature, predetermining workers' compensation attorneys' hourly rates, especially at rates lower than those approved in other types of civil cases, may well discourage attorneys from accepting workers' compensation cases.

Thus, the DCD and LIRAB are not authorized by HRS § 386-94 to predetermine workers' compensation attorneys' hourly rates, and the DCD "Attorney Hourly Rate Increase Request" form's statement that HRS § 386-94 "requires" DCD to determine workers' compensation attorneys' "authorized" hourly rates is

---

[10]    We note that in this case, Masui's hours were also reduced, but that Masui has not challenged this basis of his fee reduction.

31

unauthorized.[11]  See Haole v. State, 111 Hawai'i 144, 152, 140
P.3d 377, 385 (2006) ("Administrative rules and regulations
which exceed the scope of the statutory enactment they were
devised to implement are invalid and must be struck down.")
(citations omitted).

LIRAB's Order indicates LIRAB predetermined Masui's hourly
rate "for the period 2009 through 2012" at $165.  Because it is
not within LIRAB's statutory authority to predetermine an
attorney's hourly rate to be applied to future cases, to the
extent LIRAB relied on a predetermined hourly rate for Masui in
reducing his requested hourly rate, it acted beyond its
statutory authority and abused its discretion.

C.   **The ICA erred in holding that LIRAB adequately explained
     its reduction of Masui's attorney's fees**

Masui's third question on certiorari is whether the ICA
erred in failing to find that LIRAB's Order was arbitrary,
capricious, or characterized by an abuse of discretion.  In
order to determine whether LIRAB abused its discretion by
reducing Masui's requested hourly rate, we must first determine
whether LIRAB's explanation for its reduction is adequate to
enable judicial review.

---

[11]   While the amount awarded to the individual attorney in past cases may
be a relevant consideration in evaluating a fee request, particularly if
their qualifications have not changed, DCD and LIRAB nonetheless must make an
individualized determination of what constitutes "reasonable" fees in a given
case.

In its SDO, the ICA held LIRAB's explanation for its reduction of Masui's hourly rate was adequate because "[t]he burden is on the party seeking attorneys['] fees to prove such fees were reasonably and necessarily incurred," citing a concurrence in a non-workers' compensation case. Botelho, SDO at 6 (citing DFS Group. L.P., 110 Hawaiʻi at 226, 131 P.3d at 509 (Moon, C.J., concurring)). The ICA determined that because Masui's request for attorneys' fees did not provide the customary billing rates of Hawaiʻi lawyers practicing workers' compensation secondary appeals or the customary billing rates of any Hawaiʻi appellate practitioners, LIRAB's explanation was adequate "based on the record before it." Botelho, SDO at 7.

The ICA erred in holding that it was Masui's burden to prove that his requested fees were reasonable and by suggesting that Masui should have submitted information regarding the hourly rates of Hawaiʻi attorneys practicing workers' compensation secondary appeals and the customary billing rates of Hawaiʻi appellate practitioners. Botelho, SDO at 7. HRS § 386-94 does not place a burden on the attorney seeking fees to prove that such fees were reasonable. Rather, the statute gives the director, LIRAB, and courts the power to review fee requests and provides factors that may be considered in awarding reasonable attorneys' fees. The statute also does not require

33

attorneys' fee requests to include information about other attorneys' hourly billing rates.

HAR § 12-10-69(a), which implements HRS § 386-94, similarly contains no requirement that attorneys' provide information about other attorneys' rates. HAR § 12-10-69(a) requires attorneys' requests for fees to include a "breakdown of the time expended and cost incurred in each activity up to and including the date of the decision," and it notes that the director "may require additional details and justification of time billed or costs claims." Furthermore, DLIR's standard "request for approval of attorney's fees" form only lists as "required attorney information" an attorney's years of experience in workers' compensation cases, the number of cases that attorney participated in before DCD in the last three years, and the number of cases that attorney participated in before LIRAB in the last three years.[12] These requirements are permitted by statute, as HRS § 386-94 allows for consideration of an attorney's experience in state workers' compensation matters. However, neither HAR § 12-10-69 nor DLIR's "request for approval of attorney's fees" form requires attorneys to provide information about other attorneys' hourly rates.

---

[12] Masui provided the "required attorney information" in his request for attorney's fees. Masui also attached a "breakdown of time expended and cost incurred in each activity" related to the representation, as required by HAR § 12-10-69.

Therefore, no statute or rule required Masui to provide information about the customary billing rates of Hawai'i lawyers practicing workers' compensation secondary appeals or of Hawai'i appellate practitioners. Although HRS § 386-94 explicitly allows consideration of "the hourly rate customarily awarded attorneys possessing similar skills and experience" in awarding attorneys' fees, it appears it would be the director, LIRAB, and the courts, and not individual attorneys, that have access to that information, and attorneys may not know what other attorneys charge per hour.

In addition, LIRAB has an obligation to provide an adequate explanation for its reduction of his rate pursuant to McLaren.[13] In McLaren, this court held that DCD was "required to set forth its reasons for reducing [an] attorney's fees and costs" in order to "enable appropriate review for abuse of discretion" in awarding attorneys' fees. 132 Hawai'i at 330-32, 321 P.3d at 681-82. McLaren involved DCD's unexplained reduction of an attorney's requested fees by 47%. 132 Hawai'i at 331, 321 P.3d at 683. This court reasoned that, because LIRAB may review DCD's award of attorneys' fees for an abuse of discretion after a de novo hearing pursuant to HRS § 386-87 (1993), DCD was

---

[13]    Notably, while the ICA determined that Masui's application for attorney's fees did not provide relevant information, LIRAB's Order did not cite this lack of information as a reason for its reduction of Masui's requested hourly rate.

required to "set forth its reasons for reducing an attorney's fee request for appropriate LIRAB and possible judicial review of the reduction pursuant to HRS § 91-14."  132 Hawaiʻi at 331, 321 P.3d at 682.  As HRS § 368-88 (2015) provides for judicial review of LIRAB decisions, LIRAB must also provide an explanation "sufficient to enable appropriate review for abuse of discretion" when it amends an attorney's requested fees.  132 Hawaiʻi at 331-32, 321 P.3d at 682-83.

Following our decision in McLaren, the ICA appropriately held in Pickett that an adequate explanation for a reduction of fees requires more than a recitation of the factors LIRAB considered.  Pickett, mem. op. at 9.  In Pickett, a case also involving Masui, LIRAB reduced Masui's requested hourly rate of $210 to $165.  Pickett, mem. op. at 1-2.  While LIRAB provided some explanation for its reduction, that explanation consisted of factors LIRAB considered in determining Masui's attorney's fees, a statement of Masui's experience in workers' compensation and the number of clients he had represented before DCD and LIRAB in the last three years, and a statement that the reduced hourly rate was reasonable and "consistent with that customarily awarded to attorneys possessing similar skills and experience before the [LIRAB]."  Pickett, mem. op. at 2.

The ICA held that LIRAB's "recitation of factors enumerated in HRS § 386-94 is not an explanation" for a decision to reduce

36

requested attorneys' fees, and that "LIRAB must base its decision to award or reduce [an] attorney's fees on properly submitted evidence and its application of relevant factors in arriving at a reasonable fee, not just conclusory statements or beliefs about the factors it considers."  Pickett, mem. op. at 7-8.

Although Pickett was an unpublished disposition, the ICA's reasoning in that regard was sound.  Requiring LIRAB to do more than recite its considerations and to explain how it applied those considerations to its decision to reduce an attorney's requested hourly rate and fees is consistent with both the legislature's intent for DLIR to regulate claimant attorneys' fees and its concern that arbitrary limitations on attorneys' fees may result in claimants being unable to procure representation.  While HRS § 386-94 does not require LIRAB to consider the factors listed in the statute, judicial review for an abuse of discretion requires that LIRAB provide reasoning for how it awarded attorneys' fees.  We therefore hold that, in explaining its approval of attorney's fees, LIRAB must provide more than a recitation of the factors it considers, and it must articulate how its considerations affected its ultimate determination of attorneys' fees.

We note that while Pickett held that "LIRAB must base its decision to award or reduce [an] attorney's fees on properly

submitted evidence," HRS § 386-94 does not limit LIRAB's considerations to submitted evidence. Pickett, mem. op. at 8. Rather, HRS § 386-94 provides a non-exhaustive list[14] of factors the director, LIRAB, or courts may consider, including "the amount of fees awarded in similar cases, and "the hourly rate customarily awarded attorneys possessing similar skills and experience." Therefore, while LIRAB should consider the record in awarding attorneys' fees, its considerations are not limited to the evidence.

LIRAB's explanation for its reduction of Masui's hourly rate in this case is almost identical to but even less detailed than its explanation in Pickett, which was held insufficient. Pickett, mem. op. at 1-2. In Pickett, LIRAB stated that an hourly rate of $165 was reasonable and "consistent with that customarily awarded to attorneys possessing similar skills and experience before the [LIRAB]." Pickett, mem. op. at 2. In this case, LIRAB reduced Masui's hourly rate to $165 without any statement that such a rate was reasonable or consistent with rates customarily awarded to attorneys of similar skill and experience. Instead, LIRAB stated that "[Masui's] approved hourly rate for the period 2009 through 2012 was $165.00 per

---

[14]     HRS § 386-94 states that DCD, LIRAB, or the court "may consider factors such as" those listed. Therefore, according to the plain language of HRS § 386-94, the factors listed are not exhaustive.

hour," making it clear it relied on a predetermined hourly rate in reducing Masui's requested hourly rate.

As in Pickett, LIRAB also recited its considerations in reviewing Masui's fee request. Those factors included:

> [T]he benefits obtained for Claimant in this appeal, the novelty and difficulty of issues involved on appeal, the amount of fees awarded in similar appeals, and the hourly rate customarily awarded workers' compensation attorneys possessing similar skills and experience, including Attorney's years of practice in the field of workers' compensation law, the number of clients represented before the Board, as well as Attorney's responsiveness and timeliness.

LIRAB also acknowledged that Masui had practiced workers' compensation law for approximately 30 years and that he had represented approximately 100 clients before DCD and 50 clients before LIRAB in the past three years. LIRAB did not, however, explain how these considerations affected its decision to reduce Masui's requested hourly rate and attorney's fees.

Because LIRAB recited factors it considered in reducing Masui's requested attorney's fees without explaining how it applied these factors, LIRAB's explanation for its reduction of Masui's hourly rate was inadequate. Therefore, the ICA erred in holding that LIRAB's explanation was adequate, and we are unable to review whether LIRAB abused its discretion in reducing Masui's requested hourly rate.

## V. Conclusion

We therefore vacate the ICA's December 6, 2019 judgment on appeal and LIRAB's April 20, 2016 attorney's fee approval and

order.   This case is remanded to LIRAB for further proceedings

consistent with this opinion.

Stanford H. Masui                    /s/ Mark E. Recktenwald
for Petitioner

                                     /s/ Paula A. Nakayama

Brian G.S. Choy and
Keith M. Yonamine                    /s/ Sabrina S. McKenna
for Respondents

                                     /s/ Richard W. Pollack

                                     /s/ Michael D. Wilson